THE STATE OF KANSAS, *ex rel.* *Fred S. Jackson, as Attorney-general, etc., and John J. Schenck, as County Attorney, etc., Appellee,* v. W. S. LINDSAY, *Appellant.*

No. 17,084.

### HEADNOTE BY THE REPORTER.

CONTEMPT—*Injunction—Private Hospital for Insane—Bond—Evidence—Judgment.* In a proceeding for contempt for the violation of an injunction, held that no material error was committed in the admission of evidence, or in requiring a bond to be given for future obedience, and that the evidence sustained the judgment.

Appeal from Shawnee district court. Opinion filed June 10, 1911. Affirmed.

*Z. T. Hazen, R. H. Gaw,* and *D. P. Lindsay,* for the appellant.

*John S. Dawson,* attorney-general, for the appellee; *Ferry & Doran,* of counsel.

*Per Curiam:* The defendant, Lindsay, appeals from a judgment assessing a fine for contempt in violating the injunction reviewed in *The State v. Lindsay,* ante, p. 79. The errors complained of relate to the admission of testimony and its sufficiency, and to the judgment.

A witness residing in the vicinity of the cottages, referred to in the opinion in the case just cited, testi-

fied that he heard a woman screaming so loud that it awakened him, and that it continued for ten minutes, "a very high, screaming note. It was very grating on one's nerves. . . . It was a cry such as would startle you." Four days afterward he heard a woman screaming again, "it was that unearthly sound, a screeching and screaming. . . . I would call it unnatural, did not think a person could scream that loud. . . . I was awakened and startled by it. . . . It was worse than it was on the 5th. It continued ten or fifteen minutes after I got up." He was then asked:

"Ques. You say it was an unnatural cry. I will ask you to state whether or not in your opinion it was the cry of a person who was sane?"

An objection being made the court ruled "he may give his opinion and the court can weigh it." The same objection was made to testimony of a like character given by other witnesses. If within the limitations of the rule permitting unprofessional witnesses who have had an opportunity to observe, to give their opinion of the sanity of another, this testimony should have been rejected—it is evident that no prejudice resulted from hearing it. The witness had described the cries quite fully, and the court probably accepted the answer as an attempt to give a further description to which it added little if any weight. Besides, it appeared from the testimony of Dr. Lindsay that he caused the person who made the outcries to be removed to the state hospital for the insane in a short time afterward, doubtless because she was considered insane.

Objection is made to the testimony of another witness that screams and outcries from the cottages, which she described, made her nervous, and disturbed her. This evidence is but slightly removed in principle, if at all, from that held admissible in *Townsdin v. Nutt,* 19 Kan. 282, where it appeared that a witness had

13—85 KAN.

testified to her state of health, suffering and symptoms and the testimony was held proper. Nervousness may may be a physical as well as mental condition, but if it be only the latter the testimony is not excluded. (3 Wig. Ev. §§ 1963-1966, and notes.) It is well settled that a person may testify to his own intention when it is a material matter. (*Bice v. Rogers,* 52 Kan. 207.) Intention is a mental condition, and so is fear, anger, excitement, despondency, joy, and the like, yet these emotions, even in the mind of another person, may be shown by the opinion of a witness who has had a sufficient opportunity to observe the appearance and conduct of such person. (*The State v. Baldwin,* 36 Kan. 1.) That a mental condition may be shown by other testimony does not exclude that of the party himself. (*The State v. Hetrick,* 84 Kan. 157.) Further objection is made to the testimony that the witness was disturbed by these screams, on the ground that this was the very matter the court was called upon to decide. We do not so understand the situation. The question was whether the appellant had violated the injunction by keeping and treating persons of unsound mind in the cottages. Screams and outcries of apparently insane persons, under treatment there, tended to prove the issue; and this is a reason for receiving rather than excluding the evidence. The objection to testimony of the ultimate fact to be tried is interestingly treated in section 1921 of volume 3 of Wigmore on Evidence, and was referred to in *Insurance Office v. Woolen-mill Co.,* 72 Kan. 41, but whatever its merits when applicable, it can not be sustained here.

A further objection is to the judgment, which, in addition to a fine, required the appellant to give a bond as provided in section 260 of the civil code, relating to injunctions. We do not agree with the argument of counsel that such security can only be required in cases when restitution of property is ordered. The statute

provides that the party may be required to give security "to obey the injunction." (Civ. Code, § 260.)

Finally, it is insisted that the evidence failed to show any intentional violation of the injunction, and that it was insufficient to warrant the conviction. It is not necessary to review the evidence in detail, but after reading it we are satisfied that it was sufficient. For about fifty days after the injunction was granted patients were treated in the institution under Dr. Lindsay's care who, as the evidence strongly tended to show, were insane. Their outcries alarmed and disturbed citizens residing in the vicinity, and although complaints were made to the defendant, the disturbances still continued. While there was some conflict in the testimony the findings of the district court are sustained by competent evidence.

The judgment is affirmed.