No. 28,888.

FRED GILBREATH, *Appellee,* v. THE PRAIRIE OIL AND GAS COMPANY, *Appellant.*

(278 Pac. 707.)

Opinion
filed July 6, 1929.

*Homer V. Gooing,* of Eureka, *Thomas J. Flannelly, Paul B. Mason* and *Chester Stevens,* all of Independence, for the appellant.

*R. H. Clogston,* of Eureka, *O. C. Mosman, Clay C. Rogers* and *Paul A. Buzard,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action by Fred Gilbreath to recover compensation from the Prairie Oil and Gas Company for injury sustained by him on November 11, 1926, while engaged as a pumper on an oil lease that was operated by the defendant. He alleged his employment, that the defendant was operating under the compensation law and that while attempting to repair the pump of the company his clothing was caught in the gearing of the machinery and he was drawn into it, with the result that his left side, shoulder and arm were lacerated, and that certain other injuries had been suffered. The trial court found the injury to be permanent, that the disability was partial in quality, and awarded him compensation for a short period for total disability and six dollars per week for the remainder of the eight-year period. The defendant in its answer admitted that the plaintiff was in its employment, and that in the course of the employment in the production of oil and gas he suffered accidental injuries, but it denied that the injuries were of the character and to the extent alleged by plaintiff, and further that he did not suffer any permanent partial disability. After alleging due service of a demand for compensation, defendant stated that plaintiff had received compensation at three different times in the amount of $170.78, and that it had incurred and paid in his behalf expenses on account of the injuries, at a hotel to which

defendant took the plaintiff and his wife, including medical atten-
tion up to the sum of $140, and it then averred that plaintiff was
not entitled to any additional compensation. The case came on for
trial before the court, without a jury, more than a year after the
accident. Elaborate findings of fact were made by the court as
to the occurrence of the injuries, the character of the machinery
where plaintiff was working, that his clothing was caught in the
cog wheels of the machinery, and that he was instantly rendered
unconscious; that he regained consciousness and was lying about
fifteen feet from the pump, and that all of his clothing above the
belt had been torn from his body. It was found that he had a
wound upon the upper side of his right arm, and on the left side of
his body about three or four inches below his armpit, where there
were several bruises and wounds covering a space of six to eight
inches long and three to four inches wide, at which place the flesh
was badly bruised and mashed. There was a finding that the doctor
who cared for him found bits of clothing, grease and particles of
glass in the wounds, and that it required twenty-seven stitches to
close the wounds. At first there was some infection in the wounds,
but they all healed by January 24, 1927, and the doctor did not
treat him for his injuries after that date. No claim is made that
the plaintiff did not receive proper medical attention. It was found
that plaintiff was forty-six years of age, had worked twenty-four
years in the oil fields, part of the time as tool dresser, and that in
his lifetime he had several slight ailments, but never had a serious
sickness or disease. It was further found that complaint had been
made by him of his back and hips, and also of his knee, but that
these ailments did not appear to be related to or the result of the ac-
cident. There is a finding that there are three or four scars on his
side from two to six inches long, and that when these healed there re-
mained a great deal of reddish-brown scar tissue called keloid, which
stands out about three-fourths of an inch from his body. That the
scar tissue is sensitive and the nerve ends remain near the surface of
the scars and are sensitive to friction. It was found that there has
been little, if any, diminution or change in the tissue in the last year,
and that any movement of the left arm rubs against the scar tissue,
which causes pain and a burning sensation. It was also found that
at no time since the injury has the plaintiff had complete use of
his left arm and shoulder. That he is unable to raise his left arm
up and away from his body except to a limited extent, cannot raise

it to a horizontal position, and when attempts are made to raise his left arm there is a resistance which causes him pain, and since his injury he has been unable to do any work that requires ordinary strength or exertion in his left arm or shoulder, and further that the movement of that arm against the scar tissue causes pain and irritation. The court found that as a result of the accident the plaintiff had sustained permanent partial disability, manifested by limitation of movement, of pain and tenderness in his left arm, shoulder and side, and that the injuries sustained are ascertainable by an objective examination. The payments alleged to have been made by the defendant were found to be as pleaded. The conclusion was that defendant was not indebted to the plaintiff for doctor bills, medical, surgical or hospital treatment, but plaintiff is entitled to recover for total disability for a period of four weeks at the rate of $15 per week, $60, and to recover permanent partial disability at the rate of $6 per week for a period of 401 weeks or a total of $2,406, for permanent partial disability. The defendant appeals and assigns a number of errors in the rulings of the court.

Some complaint is made of the overruling of a motion to make the plaintiff's petition more definite and certain in respect to the extent of the injuries suffered by plaintiff, and to set out copies of demands for arbitration. It is evident from the record that no prejudice could have resulted from the refusal of this motion. The facts in the case were quite fully brought out and the matter of the motion was one largely within the discretion of the court.

Error is assigned on the admission of evidence given by Doctor Jeffery, who had made a personal examination of plaintiff the day prior to the commencement of the trial. The witness first stated his experience as a physician, and to the effect that in company with Doctor Janes he had examined the plaintiff after his body had been stripped; that it was done by inspection, palpitation, manipulations and stethoscope; that nothing was found about the heart except perhaps low vitality. That when an attempt was made to lift his left arm there was decided resistance before it reached the horizontal; that he did not discover any bad lesion in the joint itself, as the injury was mostly confined to the soft parts. He also stated that they found a lot of scar tissue where the stitches had been taken which protruded a half inch or more. That the scar tissue was about the size of a hand. He was then asked whether or not, in his opinion, the injury is a disabling one, but the question

was not then answered. It was changed to the form that, "Basing your opinion, doctor, upon what you discovered, upon what you could see, and what you could do with the movement of the arm, and from your examination, tell the court whether that is a disabling injury or not?" Although the answer given is not found in the abstract, the implications in the record are that it was answered. A motion to strike the answer was overruled. Then followed the question: "Doctor, to what extent—percentage—would you say there was in the use of that arm in raising it out from the body?" His answer was: "It is rather difficult to answer a question like that. I suppose you mean a percentage from the lowest to the highest possible motion?" "Yes, sir." "Well, it couldn't be raised to a horizontal position, which would be fifty per cent. I should say between forty and forty-five per cent." The objections were that the opinion was an invasion of the province of the court; that is, it was the principal question submitted to the court for decision, and also that the basis of his answer had not been previously stated by the witness. Objections were also made to questions relating to the scar tissue, the condition in which it was found and the sensitive effect where nerve endings have grown into it. Motions to strike out the testimony were overruled. Doctor Janes, who participated in the examination of plaintiff, gave testimony similar to that given by Doctor Jeffery over like objections. Ordinarily a witness may not give an opinion upon the ultimate fact which the court or a jury is to decide, but the testimony here hardly falls within that rule. The doctor made an examination and stated the conditions which he discovered as to the limitations on the arm and as to the scar tissue. The question was not whether the plaintiff was entitled to compensation, but was rather whether the conditions due to the injury were disabling in character. The witness did not state that the injuries discovered constituted temporary, partially permanent or total permanent disability. Afterwards the witness did say in answer to a question that the limitations on the use of the arm measured by the conditions found by him were from forty to forty-five per cent, and this answer appears to have been received without objection; nor was there any motion made to strike it out. If objection had been made it could not be held that the witness had usurped the functions of the jury or that the answer was upon the ultimate fact to be decided. (*State v. Lindsay,* 85 Kan. 192, 116 Pac. 209; 4 Wigmore on Evidence, 2d ed. § 1920.)

The other objection is that the facts upon which the witness based his opinion had not been stated by him and it is contended that before such evidence can be received and considered, the facts and circumstances forming the ingredients of the opinion must first be disclosed to the court or to the jury. The witness had experience and skill. He had observed the conditions of the plaintiff after a personal examination and then stated what he found by the examination and the tests made. Based on these he gave his opinion with a view of aiding the court in reaching a judgment. An expert may give an opinion where he has had adequate personal observation of conditions, or upon facts obtained from other witnesses in the case, or upon a hypothetical question covering facts upon which evidence has been produced. Here it is manifest that the witness reached and gave his opinion upon the things which he personally observed in the examination made. Besides it was not necessary that he should state in advance all the data upon which his opinion was founded. In 4 Wigmore on Evidence, 2d ed., § 1922, it is said:

"In the first place, then, there is no principle and no orthodox practice which requires a witness having personal observation to state in advance his observed data before he states his inferences from them; all that needs to appear in advance is that he had an opportunity to observe and did observe, whereupon it is proper for him to state his conclusions, leaving the detailed grounds to be drawn out on cross-examination."

Complaint is made of the admission of testimony given by the wife of plaintiff as to his condition on the day following the accident. She said he was nervous and upset and wanted to be put to bed at once. Asked if she could tell what his apparent condition was as to suffering pain, she replied, "Oh, he was suffering." On nontechnical questions relating to the appearance of persons and things which cannot well be reproduced or made palpable to a jury, a witness may express an opinion upon data which he has observed. (State v. Baldwin, 36 Kan. 1, 12 Pac. 318; State v. Scott, 117 Kan. 303, 235 Pac. 380; 4 Wigmore on Evidence, 2d ed., § 1974.) There may be some doubt as to whether the witness was competent to give an opinion as to whether plaintiff was suffering pain, but if it be assumed to be inadmissible it cannot be regarded as material. The conceded facts relating to the condition of plaintiff after passing through the mill, with flesh cut and mashed in a way which is not in dispute, made it certain that he was suffering pain, and we wonder why it was deemed necessary to ask such a question.

A further assignment of error is based upon the refusal of the

court to require the plaintiff to submit to an anæsthetic in order to determine whether or not there was any limitation of his left arm, and if there was, the extent of such limitation. One of the medical experts testified that there was a test other than those the doctors had made of such limitation. It was to give the person an anæsthetic and when under its effect to manipulate both the injured and the uninjured arms, and to watch the effect. Defendant requested that an anæsthetic be administered to plaintiff and that such test be made. After testimony as to the condition of plaintiff, and the danger of applying such a test, the request was refused. One of the medical witnesses stated that plaintiff had some cold and also had slight temperature, and probably it would not be advisable to apply it, especially at that time, as he might get pneumonia from the anæsthetic. Two other physicians said they did not think the test would cause any ill effects or that the plaintiff would be endangered by such a test. The plaintiff was called to the stand and asked whether he was willing to submit to an anæsthetic, but an objection to the question was sustained. In a compensation case where an injury had resulted in a hernia of an employee the defendant requested that the plaintiff submit to an operation to be performed by a surgeon of his own choosing, and that it might be made at the expense of the defendant, the trial court found that the operation would in all probability result in a complete removal of the disability, that it would not be attended with danger to plaintiff's life, and that the refusal of the plaintiff to submit to the operation was unreasonable. Upon a review of the proceedings it was held:

"The unreasonable refusal of an injured employee to permit a surgical operation where the danger to life from the operation would be very small, and the probabilities of a permanent cure very large, justifies a court in refusing compensation under the workmen's compensation law from and after the trial." (*Strong v. Iron & Metal Co.,* 109 Kan. 117, syl. ¶ 1, 198 Pac. 182.)

A further holding was that—

"The unreasonableness of the refusal of an injured employee who is seeking to recover compensation under the workmen's compensation act, to permit an operation to be performed, is a question of fact to be determined from the evidence." (Syl. ¶ 2.)

In a later case, where an injury had produced a hernia and where the defendant was insisting that plaintiff should submit to an operation, at its expense, the arbitrator found that such an operation which plaintiff had refused is successful in a great majority of cases,

and that if successful would restore plaintiff to a normal condition, but he awarded compensation. In a review of the award before the district court additional medical testimony was taken, and that court modified the award, and among other things found that the arbitrator exceeded his authority in passing upon the advisability of an operation and further found from the testimony—

"That an operation at plaintiff's age, in his then physical condition, to remedy his hernia, would endanger plaintiff's life, and that plaintiff's refusal to accept the operation tendered by defendant is not unreasonable on the part of plaintiff, and that plaintiff, to secure compensation for the injuries received, should not be compelled to submit to an operation." (*Gilbert v. Independent Construction Co.*, 121 Kan. 841, 842, 250 Pac. 261.)

On appeal this court held that whether or not the refusal was reasonable was a question of fact to be determined from the evidence in the case, and affirmed the judgment.

Here the court sustained the refusal upon the evidence which has been stated and awarded compensation. It may be noted that the demand for an operation was not made to effect a cure of an ailment or injury, but was rather to determine whether the plaintiff was a malingerer and whether the testimony of his medical witnesses was worthy of belief. In view of the testimony we cannot say that the refusal of the court to compel the plaintiff to submit to the administration of an anæsthetic for the purpose named is a ground of reversal.

There is complaint of the refusal of the court to make special findings requested by the defendant, but those made by the court cover the issues so fully that no real ground for the complaint is seen. Nor can we sustain the assigned ground of error that the evidence is not sufficient to support the findings. The evidence appears to be ample, at least sufficient to uphold the findings and conclusions of the court.

Another ground of complaint is that the court without authority rendered a lump-sum judgment. It is contended that the injury or the result of it was not ascertainable by objective examination. The statute, among other things, provides:

"The judgment in the action, if in favor of the plaintiff, shall be for a lump sum equal to the amount of the payments then due under this act, with interest on the payments overdue, or, in the discretion of the trial judge, for periodical payments, as in an award: *Provided*, In no case shall a lump-sum judgment be rendered for any injury not ascertainable by objective examination, but in such cases the court may order periodical payments during

incapacity of such sums as may be due under the provisions of section 4 of this act," etc. (R. S. 44-534.)

A reading of the testimony satisfies us that the injury as described by the medical witnesses was ascertainable by objective examination, and that the case comes fairly within the class in which a lump-sum judgment is authorized. (*Fronk v. Ajax Drilling Co.,* 121 Kan. 708, 249 Pac. 680.) It is also said that there is a lack of evidence that plaintiff asked for or consented to an arbitration. This can hardly be regarded as a contested issue in the case. The plaintiff pleaded demand for compensation, that all due and proper notices were given and also of an offer to arbitrate, which was refused by defendant. In its answer defendant admitted that written notice and demand for compensation had been given under the terms as provided in the act. At the opening of the trial counsel for plaintiff made the following statement:

"By Mr. Mosman: This suit, your honor, was originally brought by two counts, the first count being for common-law damages and the second count for compensation. The action is to be tried upon the second count for compensation. The facts, briefly, are that Mr. Gilbreath worked for the Prairie Oil and Gas Company as pumper on the lease and was caught in certain machinery and injured. I don't believe there is any question in the case about whether or not the employer and employee were under the compensation law, or the fact that notice of that claim had been made. I think the only question, as I understand it, is as to the extent of this man's injuries and also whether he has been paid full compensation. Some compensation has been paid.

"By Mr. Stevens: I think that's about all.

"By Mr. Mosman: I think the facts are simple, so that it is not necessary to go into the statement to any extent."

In view of this statement and acquiescence by counsel for defendant, and the course of the trial, the objection that there was an absence of evidence of a request for arbitration or consent to it, is not available as a ground of reversal.

Finding no prejudicial error, the judgment is affirmed.