BURNS, Respondent, *v.* AETNA LIFE INSURANCE CO. ET AL., Appellants.

(No. 7,117.)

(Submitted October 4, 1933.  Decided October 16, 1933.)

[26 Pac. (2d) 175.]

*Mr. R. F. Gaines,* for Appellants, submitted a brief and argued the cause orally.

Mr. *R. Lewis Brown* and *Mr. H. L. Maury,* for Respondent, submitted a brief; *Mr. Brown* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from an order of a judge of the district court of Silver Bow county. Mrs. Bridget Burns was awarded compensation by the Industrial Accident Board on account of injury to her hand while working in the C. O. D. laundry at Butte. The laundry company was operating under plan 2 of the Compensation Act. The Aetna Life Insurance Company was the insurance carrier. Mrs. Burns appealed to the district court from the finding of the board. The matter is now pending in that court.

The employer and the carrier proceeded to require an examination of Mrs. Burns in accordance with section 2906, Revised Codes of 1921, which reads as follows: "Whenever in case of injury the right to compensation under this Act would exist in favor of any employee, he shall, upon the written request of his employer or the insurer, submit from time to time to examination by a physician, who shall be provided and paid for by such employer or insurer, and shall likewise submit to

examination from time to time by any physician selected by the board, or any member or examiner, or referee thereof. The request or order for such examination shall fix a time and place therefor, due regard being had to the convenience of the employee and his physical condition and ability to attend at the time and place fixed. The employee shall be entitled to have a physician, provided and paid for by himself, present at any such examination. So long as the employee, after such written request, shall fail or refuse to submit to such examination, or shall in any way obstruct the same, his right to compensation shall be suspended. Any physician employed by the employer, the insurer, or the board, who shall make or be present at any such examination, may be required to testify as to the results thereof.''

A proper notice was given and served upon Mrs. Burns and her counsel, to appear at the office of Dr. J. C. Shields and ''submit herself to examination by a physician of the selection of said employer and said insurance carrier, the physician being Dr. J. C. Shields.''

Mrs. Burns did appear at the time and place as demanded. Dr. Shields in his affidavit filed in support of the employer's motion to dismiss, etc., said that when he attempted to examine her in the presence of Dr. Frisbie, she refused to submit to examination with anyone present, and left the office. Dr. Frisbie made affidavit to the same effect. The employer and insurance carrier next presented a motion to invoke the penalties of the statute (section 2906, supra). The motion demanded dismissal of the appeal or an order staying payment of compensation by reason of the alleged refusal of Mrs. Burns to submit to examination.

Counsel for Mrs. Burns filed objections to the motion, and appended affidavits of Mrs. Burns and her daughter relative to the occurrences in the doctor's office on March 21. In the main there is little conflict as to the occurrences of that meeting. Mrs. Burns did set forth that she told Dr. Shields that she was there to be examined by him and was not on public exhibition and did not intend to permit Dr. Frisbie ''or any

other person to make any examination of me except Dr. Shields, or to be present while I was examined.''

At a later date the court conducted a hearing on the motion and took testimony. At this hearing the allegations of the affidavits were reiterated by the witnesses in person, and other evidence was introduced. Dr. Shields testified that he had previously made several examinations of the injured hand, but that he was not satisfied with the results thereof. He suggested that the patient be placed in the hospital for from four to six days and her hand placed in water ''a certain number of hours a day, and see whether it does withstand water or not.''

Mrs. Burns testified that the injured hand was unnaturally susceptible to water and that she had found it necessary to wear rubber gloves in the course of housework requiring the immersion of the hand in water. She testified that Dr. Sievers, her own physician, had told her that the less she kept her hand in the water, the better it was for her, and that she had found that out for herself.

Dr. Sievers was called and testified that in his opinion the proposed hot-water test would not have any particular value; that the hand might be immersed in water without any consequences; and again that the same hand, inside of six weeks, might give disturbance from other causes.

At the hearing before the judge the charge that Mrs. Burns had refused to be examined in disregard of the statutory command resolved itself into a demand that she go to the hospital for a period of from four to six days and submit to having her injured hand immersed in hot water, as suggested by Dr. Shields. No point seems to have been made at the hearing of a refusal to allow Dr. Shields otherwise to examine her, or to allow Dr. Frisbie to participate in the examination of March 25.

The record does not show an unqualified refusal to submit to an examination by Dr. Shields on March 21. No notice had been given of a requirement that she submit to an examination by Dr. Frisbie. The penalty of the statute could not have

been enforced on either of the last-enumerated grounds in the circumstances of the case as disclosed by the record up to that point.

The record further discloses that Mrs. Burns had submitted to other examinations by Dr. Shields and that she was willing to submit to further examinations, but was not willing to enter the hospital and remain there for the required period and subject herself to the hot-water tests outlined by Dr. Shields.

The sole question before the district court on the motion ██ ██ was whether Mrs. Burns, by refusing to go to the hospital for further examination in connection with the hot-water tests, became liable to the penalties of section 2906, supra. The court ruled that she did not have to do so and ordered the case to trial.

Appellants assert that the provisions of the section are mandatory, and that the court had no power or function other than to order submission to the examination, including the tests, and, in event of refusal, invoke the penalties provided therein. The statute is mandatory, but it is not self-executing. To have advantage of the penalties some authority—either the board in the first instance, or the court after appeal—must adjudge the penalty. Certainly no one would contend that a mere assertion of a party that an injured workman had refused to submit to examination would automatically call down upon the workman the penalties provided for use only in case of a refusal. It is for someone to decide when there has been a refusal. In this case Mrs. Burns did present herself for examination, but balked at the experiments. It is true that the court, or the board, could not nullify the statute by refusing an examination.

Nebraska has a statute (Comp. Stats. 1929, sec. 48–134) in effect almost identical with our 2906. There an attempt was made to invoke the provisions against a claimant who refused to submit to an examination which included an injection of a solution of colorogol into a kidney, in order to make a better X-ray picture. A doctor testified to the necessity for the injection and said that in the hands of an expert there

was no danger to the patient. Claimant expressed a willingness to have an examination and the X-ray picture taken, but refused to submit to the injection as a part of the examination. The court held that the demand was not reasonable and that claimant's refusal should not bar her from recovery. (*United States F. & G. Co.* v. *Wickline,* 103 Neb. 21, 170 N. W. 193, 6 A. L. R. 1267; Id., 103 Neb. 681, 173 N. W. 689; see, also, *United States F. & G. Co.* v. *Nettles,* (Tex. Com. App.) 35 S. W. (2d) 1045; *Helfenberger* v. *Harriman Northeastern R. Co.,* 156 Tenn. 14, 299 S. W. 793; *Gilbreath* v. *Prairie Oil & Gas Co.,* 128 Kan. 618, 278 Pac. 707.)

We think that respondent here, having submitted to examination, was within her rights when she refused to enter the hospital and submit herself to the hot-water tests. The ruling of the district court was not error.

Order affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS and ANDERSON concur.