**CONTINENTAL CASUALTY COMPANY,
Appellant,**

**v.**

**Donald R. SWINK, Appellee.**

**No. 16042.**

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 13, 1959.

Rehearing Denied Dec. 11, 1959.

Jones, Parish & Fillmore and Elmer H. Parish, Wichita Falls, for appellant.

Kouri & Banner and Jack G. Banner, Wichita Falls, for appellee.

BOYD, Justice.

Continental Casualty Company appeals from a judgment in a Workmen's Compensation case, which awarded Donald R. Swink compensation for temporary total incapacity for twelve weeks and for permanent partial incapacity for three hundred weeks.

There was a jury trial. Appellant attacks the judgment by seventy-eight points of error, the first twenty-three of which assert error in excluding testimony that appellee refused to submit to a myelogram test and excluding evidence as to the diagnostic value of such a test, and the probable benefits of an operation if surgery was indicated.

Immediately after appellee's claimed injury, he was sent by his employer to Dr. Daily, who in turn referred him to Dr. Pace, an orthopedic surgeon. Dr. Pace testified that in all probability appellee had a "mid-line disc protrusion." He further testified that he recommended a myelogram test as a diagnostic measure. Appellee did not submit to the test.

Appellant recognizes that prior to the amendment to Article 8306, sec. 7, Vernon's Ann.Civ.Stat., by the 55th Legislature, it had been settled by the authorities that before an insurance carrier could offer evidence to prove that an operation would cure the injured workman or materially improve his condition, the carrier must admit liability, must request an operation before the Industrial Accident Board makes its award, and if the employee refuses the operation, make demand to the Board to require the examination and operation if the Board found that an operation would cure or materially improve the condition of the employee. Texas Employers Insurance Ass'n v. Kubiak, Tex.Civ.App., 276 S.W. 2d 909; American General Insurance Company v. Quinn, Tex.Civ.App., 277 S.W.2d 223; General Accident Fire & Life As-

surance Corporation v. Coffman, Tex.Civ. App., 326 S.W.2d 287. It is appellant's position that the 1957 amendment to Article 8306, sec. 7, which requires the insurance carrier to furnish medical aid "at any time," relieves it of the duty to follow the procedure set out in secs. 12b and 12e of said Article, that is, by admitting liability, tendering an operation, and requesting the Industrial Accident Board to require the necessary examination of appellee, had he refused the operation.

It was after the Board had made its award on September 11, 1958, that Dr. Pace recommended a myelogram test as a diagnostic procedure. However, on June 10, 1958, he wrote Texas Claims Service, an adjusting company which had been corresponding with him about the case, that " 'It is recommended that this patient be allowed to return to work. Adequate time has passed for a sprain to heal. If there is a more significant lesion, return to work will probably cause a recurrence of symptoms. If symptoms recur with their previous severity, hospitalization for Myelogram and possible disc surgery will be recommended.' "

Appellee worked, or attempted to work, from six weeks to two months in July, August, and September, 1958, at the State Hospital, doing lighter physical labor than was entailed by his employment at the time of his injury. He testified that he was unable to perform these easier tasks. There was other evidence corroborative of his testimony. Dr. Pace continued to examine and treat him. On September 17, 1958, Dr. Pace wrote Texas Claims Service as follows: " 'In summary, findings have never been specific enough to warrant the diagnosis of disc herniation. On the other hand, the patient's findings have been consistent and sufficient to make one wonder whether a mid-line type of disc bulge does exist. On my last interview with Mr. Swink I advised him I should be happy to hospitalize him and perform a myelogram, in an effort to resolve the question of mid-line disc herniation.' "

Appellant has consistently denied liability in this case. The only pleading it filed was a general denial. It has not paid any compensation. It has not paid or offered to pay any medical expenses of appellee. It has not tendered an operation. It has made no request of the Board or appellee for any examination with a view of determining whether an operation is indicated. It sought only to prove that appellee declined to submit to a myelogram, and the possible effects of disc surgery had a myelogram test been performed, and had it been followed by the operation.

We find nothing in the 1957 amendment to Article 8306, sec. 7, which relieves appellant from following the procedure as set out in the statutes before the amendment, and as held mandatory by the decisions. Appellant says that after a judgment for total and permanent disability becomes final, an employee may now come back and ask for a beneficial operation which will completely cure him of any disability. It is unnecessary for us to speculate on the effect, in other fact situations, as where the carrier tenders an operation, of the amendment providing that the carrier shall furnish medical aid, hospital services, nursing, chiropractic services, and medicine as may be reasonably required at the time of the injury "and at any time thereafter" to cure and relieve from the effects naturally resulting from the injury. This case went to trial on December 10, 1958, nearly three months after Dr. Pace advised Texas Claims Service that " 'I should be happy to hospitalize him and perform a myelogram, in an effort to resolve the question of mid-line disc herniation.' " It went to trial six months after Dr. Pace advised appellee to return to work, and advised the Claims Service that " 'If symptoms recur with their previous severity, hospitalization for myelogram and possible disc surgery will be recommended.' "

In its brief appellant says: "From the Statement of Facts it can be fairly said that defendant consistently throughout its rela-

tionship with the employee followed a course of permitting the employee all medical service that he desired or that was felt by the doctor to be of help." Porter, with Texas Claims Service, told Dr. Pace that if he thought it was necessary and wanted to perform a myelogram, "it was all right."

Appellee's request for admissions, No. 14, was: "That the Defendant herein has agreed to, authorized or solicited Drs. R. L. Daily and R. E. Pace, Jr., to examine and treat the Plaintiff for the injuries which he sustained as set forth in his petition on file herein." To which appellant answered: "In reply to request No. 14 the defendant states that when it learned Dr. R. L. Daily and Dr. R. E. Pace, Jr. were treating the plaintiff it made no objection, but the defendant denies the remainder of request No. 14." Appellee's request No. 15 was: "That the Defendant herein has paid or has agreed to pay Drs. R. L. Daily and R. E. Pace, Jr. for services rendered to the Plaintiff herein," to which appellant answered, "The defendant denies request for admission No. 15."

In Wilke v. Security Mutual Casualty Company, 5 Cir., 262 F.2d 419, it was held to be error to allow the insurance carrier, in a case under the Texas Workmen's Compensation law, to tender an operation for a back injury and to offer testimony as to its probable beneficial results.

Dr. Pace testified that a myelogram test was occasionally followed by headaches for several weeks; that there had been instances, although a small percentage, where fatalities have followed the tests; that for diagnostic purposes a myelogram was about eighty per cent reliable.

In Cranston Print Works v. Pascatore, 72 R.I. 471, 53 A.2d 452, it was held that a proposed myelogram test for the purpose of determining whether a compensation claimant had a ruptured intervertebral disc, which test appeared to be operative in its nature without any possible direct curative effect, and which involved risk to the claim-

ant's bodily health, was not an "examination" which the claimant was required under the compensation act to submit to upon his employer's request. See also Burns v. Aetna Life Ins. Co., 95 Mont. 186, 26 P.2d 175; Sullivan, Long & Haggerty, Inc. v. Washington, 5 Cir., 128 F.2d 466. We do not think the court erred in excluding the proffered testimony.

Appellant has several points of error in the admission of testimony from Dr. Pace as to the symptoms and effects of back injuries indicating disc involvements, which it says should not have been admitted "for the reason that Dr. Pace had not been allowed to continue his medical examination," that is, perform the myelogram test. What we have already said sufficiently indicates our views on these points, and they are overruled.

We have carefully considered all of appellant's points, but do not believe that reversible error is reflected.

The judgment is affirmed.