WILLIAM R. RITCHIE, APPELLANT, v. RAYVILLE COAL COMPANY, RESPONDENT.

Kansas City Court of Appeals. December 1, 1930.

*Robert M. Murray* for appellant.

*Johnson, Lucas, Landon & Graves* and *Ludwick Graves* for respondent.

ARNOLD, J.—This is an appeal from the judgment of the circuit court of Ray county, Missouri, approving and affirming a final award of the Workmen's Compensation Commission.

The record consists of the formal claim for compensation, the answer thereto, the testimony presented at the hearing before the commissioners, their findings of fact, statement of facts and rulings of law, certificate of appeal to the circuit court of Ray county; finding and judgment of the circuit court and affidavit for appeal and order allowing appeal to this court, about none of which is there any question raised. The facts are simple and there is no material disagreement as to them. The claimant William R. Ritchie, on December 20, 1928, was in the employ of the Rayville Coal Com-

pany, working as a coal miner in the company's mine at Rayville, Ray County, Missouri; that on said day in the course of his employment he was sitting on the floor of the mine in a stooping position when a rock or slab of coal fell from the roof of the mine, striking him on the head and back, forcing him forward and downward, crushing or fracturing the twelfth dorsal and first lumbar vertebrae in his back. Application was duly made for compensation, both employer and employee operating under the Workmen's Compensation Law of Missouri, and defendant began paying plaintiff $13.56 per week, which was the proportion of his wages to which he was entitled under the act during total disability, and continued so paying him until May 10, 1929, or a total of $234.50.

From the date of the accident plaintiff was under the care of a physician, under whose advice he returned to work in the mine. He continued working three days in the early part of February, 1929, but was unable to continue. The testimony shows that thereafter he did some farm work. It is shown in the evidence that as a result of the accident plaintiff's back began to slump forward and he gradually became a humpback.

As early as March 4, 1929, and a few times thereafter, the company orally urged and attempted to persuade claimant to undergo a stabilizing operation to correct the deformity which had developed. This deformity is technically called by physicians Kyphosis, but is generally known to laymen as humpback. Two X-rays were taken of claimant's injured back, the first on January 20, 1929, and the second on April 1, 1929. These X-rays showed a crushed fracture of the twelfth dorsal and the first lumbar vertebrae, the picture last taken showing a greater Kyphosis than the former. Dr. Rex L. Dively testified that on March 14 and again on April 4, 1929, he examined claimant and on both occasions he had explained to claimant that a stabilizing operation should be performed, the operation to be preceded by a week or two of recumbency on a frame to overcome his existing deformity. This witness testified the recognized methods of correcting any crushed fracture of the spine are, first to overcome the existing deformity, then a stabilizing operation to strengthen the weakened portion of the vertebrae, either by external means such as braces or casts, or by internal means such as a bone graft across the weakened segment of the spine; that this last named method gives a higher percentage of results and is really the only method for a man who must use his back in working. Witness explained the spine is composed of segments very much like spools; that the weight of the entire body rests in an erect position on these spools or segments. A crushed fracture means that these bodies are jack-knifed and this portion of the vertebra crushed. That;

"In the jack-knifing process the anterior portion or the front portion of the crushed vertebra is crushed into a wedged position, and instead of being square, is then of a wedge shape. Then that caused the humpbacked position, the spinous process of the crushed segment protruding outward. This naturally becomes a weakened segment or link in the chain. In the treatment of this condition the man is placed in a recumbent position and the angulation of humpback is overcome by pulling the vertebrae into place, but of course, there is nothing to hold it in place, on account of the wedge shaped vertebra. Then a piece of bone is taken from the shin and placed about two segments above and two segments below the wedge shaped vertebra, and this stiffens that portion of the spine and holds it in place."

The witness further testified he did not consider this a very serious operation; that he had participated in perhaps a hundred of these cases and had lost none; that taking a part of the shin bone does not weaken the leg; that eighty-five to one hundred per cent of those so operated on are benefited thereby and are none the worse for having it done.

In this testimony, Dr. Dively was largely corroborated by physicians who, at the request of the commission, examined claimant and so testified at the hearing. However, claimant did not consent to such an operation and on April 23, 1929, the coal company addressed a letter to claimant informing him of the reports of Doctors Hess, Dickson and Dively, and calling his attention to the provisions of the Workmen's Compensation Act, sec. 13, par. d, as follows:

"No compensation shall be payable for the death or disability of an employee, if and in so far as the same may be caused, continued or aggravated by an unreasonable refusal to submit to any medical or surgical treatment or operation, the risk of which is, in the opinion of the commission, inconsiderable in view of the seriousness of the injury."

The company further informed claimant in said letter that the company stood ready to stand the expense of medical, surgical, and hospital treatment for such operation; and that claimant, if he so desired, could select his own physician, or such other requirements at his own expense. The letter further informed claimant that;

"In order to conform to the requirements of the compensation law and the unanimous recommendation of the several specialists who have examined you, our company insists that a bone grafting operation is necessary, . . . and that unless we receive an affirmative answer to the above on or before May 10th, the Rayville Coal Company will be justified in ceasing to pay further compensation on and after that date."

Claimant refused the suggested bone grafting operation and the company ceased to pay further compensation, as above indicated. Complainant testified that his family physician, Dr. Cook, told him never to have his back operated upon unless it had to be done as such operation was dangerous. Dr. Cook testified at the hearing that he had no recollection of making such a statement to claimant, and in his testimony stated he believed such an operation would render claimant able to do his work as a miner. At the hearing claimant gave as his reasons for not submitting to the surgical operation, "I am afraid of one. I think I get along as well without an operation as I would with one." Another reason he gave was that he could tell his improvement better than any doctor can "because the injury is on me and not on the doctor;" that he thought his knowledge superior to that of the doctors, meaning, of course, as he explained, in his own case, and because of this knowledge he refused to submit to the operation. On the witness stand claimant again refused to submit to the operation. The testimony showed claimant was in general good health and that his heart was strong and able to withstand a general anesthetic. In its statement of facts and rulings of law the commission stated:

"We believe and find from the evidence that employee's refusal to accept the operation is unreasonable for the reason that there is a possibility of the disability becoming greater by refusing the operation. We therefore rate employee on the disability existing at the date of hearing which we believe and find to be twenty-five per cent permanent partial."

On appeal to circuit court of Ray county, the court approved and affirmed the award, as above indicated. No point is made by claimant relative to the above finding of the commission not being in conformity with paragraph "d" of section 13 of the compensation act.

It is urged by appellant the court erred in holding the compensation commission acted within its powers in making the award. This point involves the construction to be placed upon par. d, sec. 13, of the compensation act, found at p. 498, Sess. Laws of 1927, as follows:

"No compensation shall be payable for the death or disability of an employee, if and in so far as the same may be caused, continued or aggravated by an unreasonable refusal to submit to any medical or surgical treatment or operation, the risk of which is, in the opinion of the commission, inconsiderable in view of the seriousness of the injury. . . ."

Claimant bases his contention cheifly on three points, namely: (1) The commission had not the power to compel claimant to submit to the surgical operation suggested; (2) there was not sufficient evidence of record upon which to base the finding, if the commission had such power; and (3) the compensation act does not

authorize the commission to base such ruling upon the findings of fact made by it. It is pointed out the doctors agreed there was two methods of treatment for the condition existing at that time, both of which, if successful would produce the same result. The first was by a system of bracing and casts applied to the back for a number of months; and the second was by performing a bone-grafting operation; that the only distinction between these two methods of treatment made by the doctors was that the surgical operation was successful in a higher percentage of cases and, if successful would bring about the results in a shorter time. It is suggested claimant agreed to submit to the bracing operation, but we have read the entire record and do not find any evidence therein that he offered to submit to such operation. It is true his objection was directed to the surgical operation.

As to authority of the commission to make such a ruling as they made in this case 2 Schneider's Workmen's Compensation Law, p. 1256, p. 496, is in point, where it is said:

"The following subsection of the Missouri Act, section 13(d) sets out substantially the rule of law on this subject as evolved by the decisions in those States where a similar section is not contained in the act. . . . (Here quoting sec. 13(d) Missouri Workmen's Compensation Law.) The question whether the refusal to submit to medical treatment or surgical operation is unreasonable depends upon the facts of each case."

We have not the benefit of any case in Missouri directly in point, but our attention is called to the case of Strong v. Sonken-Galamba, 109 Kans. 117, 198 Pac. 182, which though not binding on us is highly persuasive. It is an exhaustive review of the subject before us. The opinion, in effect, holds the unreasonable refusal of an injured employee to permit a surgical operation where the danger to life from the operation would be very small and the probabilities of a permanent cure very large, justifies the commission in refusing compensation from and after the trial; and that the unreasonableness of such refusal is a question of fact to be determined by the evidence. In the Kansas case the court was construing a law similar in all respects to ours. Under a reasonable construction of the law, we must hold the commission was acting within its powers in making the award it did.

The second point urged by appellant is that the trial court erred in holding there was sufficient evidence of record to support the award. Section 44 of the act provides, in part:

"Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand

for re-hearing, or set aside the award upon any of the following grounds and no other:

"1. That the commission acted without or in excess of its powers.

"2. That the award was procured by fraud.

"3. That the facts found by the commission do not support the award.

"4. That there was not sufficient competent evidence in the record to warrant the making of the award."

The commission, as well as the trial court, determined against claimant's contention, all of the enumerated points in section 44, and we find no error in such ruling. Claimant's citations do not in any way conflict with this view. It must be held that under the law it was the province of the commission to determine the question as to whether or not claimant was unreasonable in refusing the proffered surgical operation, and we may not disturb the judgment of the trial court on the record before us.

Finally, it is urged it was error for the circuit court to refuse to pass upon the rulings of the commission on the admission and rejection of evidence at the hearing before it. Section 51 of the act, Session Laws of 1927, page 515, provides:

"All proceedings before the commission or any commissioner shall be simple, informal and summary, and without regard to the technical rules of evidence, and no defect or irregularity therein shall invalidate the same. Except as herein otherwise provided, all such proceedings shall be according to such rules and regulations as may be adopted by the commission."

As above stated, section 44 provides:

"Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its power shall be conclusive and binding."

Under the provisions of this clause, it is clear the circuit court must accept the record as presented and it was without authority to pass upon the admissibility of the evidence. The only point for the circuit court to pass upon was whether there was sufficient competent evidence to support the award. The court passed upon this question adversely to claimant's contention..

The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.