[Civil No. 3251.  Filed January 23, 1933.]

[18 Pac. (2d) 913.]

SIX COMPANIES, INC., Petitioner, v. THE INDUSTRIAL COMMISSION OF ARIZONA, R. B. SIMS, WILLIAM E. HUNTER and CHARLES HARTMAN, as Members of The Industrial Commission of Arizona, and GILBERT DEKKER, Respondents.

Messrs. Thelin & Marrin, Messrs. Moore & Shimmel and Mr. A. R. Lynch, for Petitioner.

Mr. Burt H. Clingan (Mr. Emil Wachtel of Counsel), for Respondent Commission.

ROSS, C. J.—This case arises under the Workmen's Compensation Law (Chap. 24, art. 5, §§ 1391–1457, Revised Code of 1928), and the question presented and argued is whether the Industrial Commission erred in awarding compensation to the petitioner's employee, Gilbert Dekker, for permanent partial disability.

The employee was injured on November 13, 1931, by a fall or slide of rock in one of the large tunnels being constructed by petitioner in connection with Hoover Dam on the Colorado River, said fall or slide of rock occurring on the Arizona side. The employee sustained a fracture of the tibia and fibula of the right leg and as a result thereof received hospital treatment until March 18, 1932. He returned to his work on April 1, 1932, and has been ever since employed at his usual work by the petitioner.

On his application to the Industrial Commission he was, on March 25, 1932, awarded temporary disability compensation, calculated on his average monthly wage of $168, in the sum of $441.04, and permanent partial disability compensation of $84

per month for five months, beginning April 3, 1932. This award was made on the unverified reports of the physicians who attended Dekker from November 13, 1931, to March 18, 1932, and without any formal hearing. When the petitioner learned that the award included compensation for permanent partial disability, it filed a motion for a rehearing, which was granted. At the rehearing, which was held at the offiec of the commission on May 17th, two local physicians, Drs. A. M. Tuthill and A. C. Kingsley, testified as to Dekker's physical condition. Upon this testimony and the unverified reports of Drs. R. D. Balcom, of Las Vegas, Nevada, and Wales A. Haas, chief surgeon for petitioner, the above award was confirmed by the commission. Dekker was present at the rehearing but was not called as a witness by either side and did not himself request to be allowed to testify.

It is the contention of the petitioner that the evidence does not support the award for compensation for permanent partial disability. The evidence bearing upon the injury, its character, durability and effect upon the capacity of Dekker to perform labor in the future, as gathered from the testimony and statements of the doctors, is as follows:

November 19, 1931, Dr. Balcom, who administered first aid, reported the injury as "fracture of the left tibia and fibula at the junction of the middle and lower thirds. . . . "

February 22, 1932, Dr. Haas reported:

" . . . At present time patient has trouble in walking and is required to use a crutch.

"X-rays taken today (February 22nd) show very poor anatomical approximation of the tibia and fibula. Functional approximation fair.

"Because of the necessity to fill in with callus this man will probably be off work one more month. Callus formation at this time is good. . . .

"Estimated temporary disability 1 month.
"No permanent disability."

March 3d Dr. Balcom reported:

"May perform work not requiring him to be on feet continuously or walking over rough ground now. . . . Will have no disability. Perfect result obtained—should have about a month more time before risking working in rough ground."

March 18th Dr. Balcom reported:

"Cannot go to work yet on account of his work being on rough ground, which would endanger re-hurting his leg."

March 12th Dr. Balcom reported:

"Patient was kept in hospital till December 21, 1931, when he was released as an out-patient and required to report regularly to Dr. Balcom till his final release on March 18th, 1932, when he was discharged as being able to resume work April 1, 1932."

May 10th Dr. Haas reported (the result of his examination of May 4th):

"Examination this date shows no limitation movement right leg.

"Patient complains of pain in ankle and some swelling.

"On examination, find no limitation of motion of ankle or knee: no shortening of the leg and very little swelling of ankle.

"X-rays at this date show very good callus formation with good functional approximation.

"No temporary disability. No permanent disability."

At the rehearing Dr. Tuthill testified:

"I found he had a healed fracture of the right tibia and fibula, the fracture having occurred about the middle third. Bones in good position. The only abnormality found was a slight derangement of the weight bearing line at the right ankle. This was very slight. . . .

"I do not believe that this man will in time show any permanent disability. Sufficient time has not

elapsed since his injury to restore this man's leg to normal usefulness. He can get around on it but it swells every day after having been on it and is more or less painful. In a few months—I estimate six—which may or may not be right—he will have a leg practically as good as it ever was."

On cross-examination he said the derangement of the weight-bearing axis was permanent and abnormal.

Dr. Kingsley's unverified report (of May 16th) reads:

"Union is firm and the alignment seems very good. There does not appear to be any interference with the weight bearing axis. There is no shortening in leg in comparison with the opposite member. . . . slight outward bowing of the tibia. Motion in the ankle and knee seem perfectly normal.

"A very good functional result has been obtained considering the character of the fracture, though there will probably be a very small amount of permanent disability."

Dr. Kingsley's oral testimony was confirmatory of his report.

The petitioner concedes the rule of this court to the effect that the decision of the Industrial Commission on disputed questions of fact is decisive when there is evidence to support such decision. The quarrel is with the commission's finding that Dekker suffered a permanent partial disability compensable under our Compensation Law. It is contended that there was no evidence to support a finding of a permanent partial disability, or if so no evidence as to the extent or percentage of such injury upon which to base compensation.

Section 1438, subdivision (C), Revised Code of 1928, provides compensation in addition to compensation for temporary disability:

(o) For the loss of a leg 55 per cent. of the average monthly wage for fifty (50) months, and

(u) for the partial loss of use of a leg 50 per cent. of the average monthly wage during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member, which the partial loss of use thereof bears to the total loss of use of such member.

The commission admits its award of permanent partial disability was made under (u) and (o) of subdivision (C) of section 1438, *supra.* The amount of the award indicates that a partial loss of the use of the right leg was estimated at one-tenth of the complete loss of the use of such member, or, according to the formula, 50 per cent. of the employee's monthly wage for five months. That the right leg was permanently injured to some extent is clear from the evidence. Dr. Tuthill says: ''There was a slight derangement of the weight bearing line at the right ankle.'' And Dr. Kingsley: ''There will probably be a very small amount of permanent disability.''

The whole evidence indicates that the employee's injury will not affect his ability to earn wages, nor do we think it necessary that it should to authorize compensation for the partial loss of the use of the leg, such compensation being granted regardless of its effect upon the employee's future earning power. A partial loss of the use of a leg is placed in the list of injuries enumerated in subdivision (C) of section 1438, *supra,* for which a specific compensation is provided without any regard to its effect upon the employee's earning power. Just how the commission was enabled to estimate the partial loss of the use of the right leg as 10 per cent. of the complete loss of such limb, we do not understand. The evidence as a whole seems to indicate that the after effects of the injury are but slight, one witness stating that the leg ''will be practically as good as it ever was'' in a few months. We think there should have been some

evidence showing the percentage of the partial loss of the use of the leg, since the compensation is arrived at upon the basis of percentage. The Commission has no right, as it seems to have done, arbitrarily to fix such percentage at 10 per cent. of the complete loss of the use of the limb. If it could without any evidence find such loss as 10 per cent., it could with equal right fix it at 30, 40, or 50 per cent. Its findings must be based on some evidence.

The Commission cites, as authority for the sufficiency of the evidence to support its finding and award, *Prairie Pipe Line Co.* v. *Bailey,* 152 Okl. 49, 3 Pac. (2d) 672, and *Geis Price Grain Co.* v. *Bailey,* 155 Okl. 302, 9 Pac. (2d) 424. In the first case it seems the employee's compensation was ascertained by a percentage of the loss of the use of a foot. One doctor testified that such loss was 12 per cent. and another 10 per cent. and the employee 50 per cent. The commission found that the loss was 20 per cent., and its finding was sustained by the court. It will be seen, as stated by the court, that there was ample competent evidence to support the finding. In the second case it was contended that the finding of the commission, that the claimant was partially permanently injured, was not supported by the evidence. An examination of the opinion shows that such finding was well supported by both expert and nonexpert testimony. In the present case there is no evidence, either expert or nonexpert, upon which to compute a 10 per cent. loss of the use of the employee's leg.

For the reason that the evidence does not support the finding or the award the latter is set aside and vacated.

LOCKWOOD and McALISTER, JJ., concur.