[Civil No. 3313.   Filed October 2, 1933.]

[25 Pac.  (2d)  273.]

ANTONIO UJEVICH, Petitioner, v. INSPIRA-
TION   CONSOLIDATED   COPPER   COM-
PANY,  a  Corporation,  Defendant-Employer,
THE INDUSTRIAL COMMISSION OF ARI-
ZONA, Defendant-Insurance Carrier, Respond-
ents.

Mr. Austin O'Brien and Mr. V. L. Hash, for Peti-
tioner.

Mr. Don C. Babbitt and Mr. Emil Wachtel, for Respondents.

ROSS, C. J.—The petitioner, Antonio Ujevich, on November 16, 1928, while working for the Inspiration Consolidated Copper Company as a miner, was accidentally run into by the motor of an ore train and sustained a fracture of his right leg, between the knee and ankle, of the left leg in the upper part of the femur, and also of his left hip-bone.

On August 24, 1929, the Industrial Commission awarded him compensation for temporary total disability in the sum of $881.28, and for permanent partial disability the sum of $74.75 per month for five months. This was 50 per cent. of his average monthly wage. On September 16, 1929, upon the application of petitioner, the award of August 24th was amended to allow compensation for ten months at $74.75 per month. Upon a rehearing the commission affirmed its findings and award of September 16th. The petitioner was paid the compensation for temporary total disability, as also the award for permanent partial disability, either by the employer or out of the state compensation fund in which the employer was insured.

On June 29, 1932, the Industrial Commission, on the application of petitioner, again amended its findings and award of September 16, 1929, by extending permanent partial disability compensation at the same rate for seven and one-half months, making the allowance for such compensation seventeen and one-half months.

On July 16, 1932, petitioner moved for a rehearing on the last above-named award, which was granted, and on December 13, 1932, after an extensive hearing, the commission in its decision upon the rehearing affirmed the finding and award of June 29th.

Within the time allowed by law, petitioner applied to the Supreme Court for a writ of *certiorari* to the Industrial Commission. The return of the commission to said writ is now before us.

The only question raised is as to whether the award is the one that should have been made for the kind and character of injuries or losses proved by the evidence. The findings of the commission are general. They do not describe or classify the injury or injuries to petitioner, as we think they should, so that it could be determined therefrom the statutory provision under which the award was made.

The petitioner was 52 years of age. Both the tibia and fibula of the right leg were fractured, as also the upper third of the femur of the left leg, which extended to the left hip-bone. He was confined to the hospital for five months after which he was able to walk with a cane. The fractures healed with a firm bony union, in good position and alignment. A periosteal spur, during the process of healing, formed at the inner side of the shaft of the left femur. The petitioner says his left leg and hip hurt him when he stands or walks, so much so that he cannot work. He also says this leg swells and turns black when he uses it very much. There is some limitation of motion of the left thigh. In May, 1932, for the purpose of trying to remove the causes, or one of the causes, of petitioner's suffering and pain in his left leg and hip, the physicians of the employer undertook to remove the periosteal spur mentioned above, but had to abandon it on account of the patient's poor reaction to the anaesthetic. He refuses to again submit to an operation. The right leg apparently gave petitioner no trouble or pain after it healed. The left leg is about one and three-quarter inches shorter than normal. The percentage of general disability caused by the injuries was estimated by the experts

at the December, 1932, hearing to be from 15 to 30 per cent.

The petitioner asserts that under section 1438 of the Revised Code of 1928 he should have been awarded compensation: (1) For temporary total disability; (2) for permanent partial disability, under class (u) of that section; and (3) for partial disability to work under class (w) of said section; whereas he was awarded compensation only under (1) and (2). We have not heretofore thought petitioner's claim correct, and after reading his analysis of the different parts of the statute, and giving his contention the serious consideration it deserves, he has not convinced us that he is right. He cites no authority.

In most, if not all, cases there is temporary disability. It may be total or partial. Its duration and compensation if total may extend for one hundred months, if partial, for sixty months. Actually it is generally very much less. The total temporary compensation is fixed at 65 per cent. of the average monthly wage of the injured workman; if partial temporary, 65 per cent. of the difference between wages earned before and those he is able to earn after injury. We assume that, since no question is made as to the correctness of the temporary compensation, that it conformed with the evidence and law. In addition to temporary disability there generally follows permanent total disability, which is defined in subdivision (B) of section 1438, or temporary or permanent partial disability, defined in subdivision (C) of the same section. It is the latter kind of disability, that is, permanent partial, that concerns this inquiry. In subdivision (C), from the letter (a) to the letter (v), are listed injuries or losses that are therein classed as permanent partial disabilities, and to each one is ascribed a formula by which to figure compensation which "shall be paid in addition to the

compensation paid for temporary total disability for the period named in the following schedule: (a) For the loss of a thumb, fifteen months; . . . (u) for the partial loss of use of a . . . leg . . . fifty per cent. of the average monthly wage, during that proportion of the number of months in the foregoing schedule provided for the complete loss of use of such member . . . which the partial loss of use thereof bears to the total loss of use of such member. . . . "

Taking, for example, the formula prescribed to ascertain the compensation for the loss of a thumb, we find it is 55 per cent. of the average monthly wage of the injured employee for fifteen months. If such employee's average wages were $100 per month, his permanent partial disability compensation would be $55 per month for fifteen months, or $825. This sum, the statute says, "shall be paid in addition to the compensation paid for temporary total disability." The legislature selected certain kinds of injuries or losses that employees suffer and fixed a definite sum or rule for ascertaining that sum and said, in effect, such sum together with the temporary total disability compensation shall be in full satisfaction of the employee's loss. It provided compensation for such loss whether any permanent disability to earn wages followed or not. It assumed that every loss enumerated would cause some permanent loss of earning power, and arbitrarily fixed the compensation therefor. While the application of this rule may in some instances compensate the employee more than he has been disabled, in others he doubtless will receive less than his ability has been depreciated by reason of the accident.

It appears that the loss of use of petitioner's legs by reason of the accident and injury should be compensated as permanent partial disability on a percentage basis, as provided in (u) of subdivision (C).

*Six Companies, Inc.,* v. *Industrial Commission,* 41 Ariz. 366, 18 Pac. (2d) 913 and 915.

When the last-amended award, or, rather, when the order affirming such award, was made, on to·wit, December 13, 1932, there was no evidence in the record showing, or tending to show, the percentage of the loss of use of petitioner's left leg. At that time if there had been any loss of the use of the right leg other than temporary it was not shown by the evidence. The commission should have ascertained the number of months petitioner was entitled to permanent partial disability compensation for the loss of use of his left leg, by reason of the accident, according to the formula given in (u) of subdivision (C), and awarded compensation for that time. This award and the temporary total disability award are all the compensation petitioner can be paid for the injury to his legs. Whether seventeen and one-half months is too little or too much we have no way of knowing and cannot know until the commission ascertains the percentage of loss of use of the left leg.

The losses or injuries listed and enumerated under subdivision (C) of section 1438, from (a) to (v), are not the only injuries or losses that employees suffer. While they are the most common, there are many others that are not covered at all unless they come under (w) of said section. One of that kind, for example, was *Kilpatrick* v. *Hotel Adams Co., ante,* page 128, 22 Pac. (2d) 836, in which the employee's injury was to his back. Another is *Zagar* v. *Industrial Commission,* 40 Ariz. 479, 14 Pac. (2d) 472, in which an injury to the spine and leg caused a general breakdown of the central nervous system. Injuries of the kind found in these two cases and many others must be compensated, if at all, after the period of temporary disability, under (w).

The petitioner, it appears, in addition to the injury to both of his legs, suffered an injury or frac-

ture of the left hip-bone at its juncture with the shaft of the femur. An injury to the hip is not classified and specifically compensated under subdivision (C) of section 1438. If, as a matter of fact, such injury contributed in any way to the disablement of the petitioner to work, he should be compensated therefor under (w) of said subdivision (C); such compensation to be calculated according to the formula in (w).

Whether the petitioner's refusal to submit to an operation for the removal of the periosteal spur mentioned is unreasonable will depend upon expert medical and surgical advice. (Last sentence of section 1438, *supra.*) If he can safely submit to either a local or general anaesthetic he should do so. Some of the experts' testimony was to the effect that this bony spur is possibly the cause of petitioner's left leg and hip not getting well or making better improvement.

The award is set aside and vacated, and the cause remanded for further action in accordance with this opinion.

LOCKWOOD and McALISTER, JJ., concur.