LENEL E. SIMMERMAN, APPELLEE, V. FRED FELTHAUSER, APPELLANT.

FILED JANUARY 4, 1934. No. 28875.

*Cook & Cook,* for appellant.

*Abbott, Dunlap & Corbett, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and CLEMENTS, District Judge.

PAINE, J.

This is an appeal in a compensation case by the employer against an award for disability.

The plaintiff and appellee had been employed by the defendant and appellant for nine years as a filling station attendant, and on the date of the accident, June 11, 1931, he was drawing $30 a week. The accident occurred when his employer was taking him out in the country to do some work. Two cars collided and the employer's car was wrecked. The plaintiff's arm was caught and crushed, and the employer, not being able to stop the flow of blood, telephoned for an ambulance, and at the hospital it was found that, in addition to cuts in the arm, the skin and flesh on the back of the right hand had been torn away from the knuckles to above the wrist by being ground against the gravel of the highway. A plastic operation was performed, and it was dressed every other day, and late in July, when he left the hospital, there was still an open wound, which did not heal over for several months. From the date of the accident he was paid compensation until July 27, 1931, on which date the physician of the compensation carrier told plaintiff to report back for work; and while such doctor indicated that the employee was still suffering 75 per cent. disability of the hand, he thought that some motion and exercise might strengthen the hand. The plaintiff could only perform a very minor part of his former work, and was, therefore, paid only $5 a week as wages for the first two weeks, but after August 13, 1931, he was paid $10 a week wages, which still continues.

In the brief of defendant, all of the five propositions of law relied upon for reversal relate entirely to the proposed operation, and defendant insists that plaintiff should be denied all compensation unless he submits to this operation, and that the court's finding, that no operation had been tendered prior to the date of the trial, and that there was not sufficient evidence to compel plaintiff to submit to a surgical operation as a condition precedent to his recovery of an award, is all wrong.

While our Nebraska court has not passed upon this exact point, other courts have held that a motion made

at the trial to suspend compensation until employee submits to operation, which had been tendered theretofore, may be overruled. *Gulf States Steel Co. v. Cross,* 214 Ala. 155.

The case of *Kricinovich v. American Car & Foundry Co.,* 192 Mich. 687, is relied upon in the brief of defendant. In this case the defendant's surgeon had operated twice upon plaintiff's leg for a compound fracture, and the bone appeared to be firmly united and the wound healed, yet the plaintiff continually complained of pain, of which there were no objective symptoms. Three physicians testified, and agreed that the operations which had been performed were successful, and that, *if* there was the pain as complained of by the plaintiff, it could only be caused by the entanglement of a nerve filament in the scar, or in a calloused growth thrown out, and that a slight operation to loosen up the nerve tissue might stop the pain. The operation was not dangerous to life or health. All of the physicians who testified agreed that it would involve little suffering, and was not an experiment. The plaintiff's only objection was that he was afraid he would lose his leg and possibly his life. It was held that the plaintiff should first discharge his primary duty, to make use of every available and reasonable means to make himself whole, and that this he had not done, and that he must either submit to the operation or release his employers from the obligation to maintain him.

The case at bar can be distinguished from this case in many ways. In the first place, Dr. Reeder, who had entire charge of the case, testified that there was always an element of chance in an operation to release tendons from scar tissue, and that he would not venture the assertion that it would be 100 per cent. perfect, and the evidence shows that during all these months Dr. Reeder had not recommended nor suggested an operation while he was in charge of the patient. Dr. Harvey testified that he would not recommend an operation at this time, because he had some use of the hand as it was, and there

was a chance of making it worse. Dr. Moore, who was the surgeon for the Burlington, Union Pacific, and Northwestern railroads, testified that there were adhesions of the extensor tendons to the muscles and skin of the back of plaintiff's hand, and whenever he tries to move his fingers it pulls the skin, so that the operation would be to detach the skin from the tendon and take some of the membrane covering the muscles and from this make a sheath around each finger tendon, thereby making a new tendon sheath, and, while there was an element of chance in every operation, he testified that he knew no reason why this operation would not be successful, but it could not have been done at the time of the injury because the wound at that time was infected. Therefore, we see that one of the surgeons does not recommend the operation, another surgeon does recommend it, and the one who has had charge of the plaintiff all these months never suggested it.

"Where doctors disagree as to the probable success of an operation, the trend of the decisions is that a refusal by employee to submit to the operation under such circumstance is not unreasonable." *Wingate v. Evans Model Laundry*, 123 Neb. 844. See *Kingsport Silk Mills v. Cox*, 161 Tenn. 470. If the weight of the surgical testimony is adverse to an operation, the court should not compel the employee to submit to one.

The unreasonableness of the refusal of an injured employee to permit an operation to be performed is a question of fact to be determined by the evidence, and the burden of proof to establish that the tendered operation is simple, safe, and reasonably certain to effect a cure is upon the employer. *Frost v. United States Fidelity & Guaranty Co.*, 109 Neb. 161; *King Drilling Co. v. Massenburg*, 154 Okla. 236; *Neary v. Philadelphia Coal & Iron Co.*, 264 Pa. St. 221; *Myers v. Wadsworth Mfg. Co.*, 214 Mich. 636; *Cody v. John Hancock Mutual Life Ins. Co.*, 111 W. Va. 518, 86 A. L. R. 354; *Liberty Life Assurance Society v. Downs*, 112 So. (Miss.) 484; *Schiller v. Balti-*

*more & O. R. Co.,* 137 Md. 235; *Bloomfield Brick Co. v. Blaker,* 94 Ind. App. 230; *Ritchie v. Rayville Coal Co.,* 224 Mo. App. 1128; *Consolidated Lead & Zinc Co. v. State Industrial Commission,* 147 Okla. 83, 73 A. L. R. 1298; *Lesh v. Illinois Steel Co.,* 163 Wis. 124, L. R. A. 1916E, 105; *Snook's Case,* 264 Mass. 92; *International Harvester Co. v. Scott,* 163 Tenn. 516.

The English courts have held that the workman is not unreasonable in refusing the operation where, in the opinion of his own doctor, it involves considerable risk to life, or where the workman's doctor advises that the treatment will be useless. Harper, Workmen's Compensation, 434; 2 Schneider, Workmen's Compensation Law, sec. 496; *Moore v. List & Weatherly Construction Co.,* 144 So. (La. App.) 147.

In attempting to reconcile many cases which will be found in conflict with these general statements of law, many of such cases will usually be found upon examination to be operations for hernia. In some of these cases, hernia is styled a major operation, and it is probably so accepted by the medical profession generally. However, it is an exception to the general rule in regard to major operations, because the technique of the operation follows along such well-established lines and the danger of infection and loss of life has been reduced to such a small percentage, together with the fact that, so long as the employee is not operated upon, he is for many kinds of work entirely disabled, and after a successful operation he is restored to practically the same condition as before; therefore, the courts have generally ruled on a hernia operation as if it were a minor operation. *Moran v. Oklahoma Engineering & Machine & Boiler Co.,* 89 Okla. 185; *Gentry v. Williams Bros.,* 135 Kan. 408. In one case involving an operation for hernia, the testimony showed that one operation out of a thousand for such hernia as the plaintiff had would result fatally; that 12 per cent. would not result in a cure, and that 88 per cent. would result in cure. *Strong v. Iron & Metal Co.,* 109 Kan. 117, 18 A. L. R. 415.

It is within the discretion of the injured party whether or not he cares to take the chance of the outcome of a surgical operation. The court will not speculate as to what might be the outcome of such an operation, and under the evidence we are unwilling to hold that the same would be simple, safe, and reasonably certain to effect a cure.

There being no error in the record, the judgment of the lower court is affirmed, with an allowance to plaintiff of $100 as attorney's fee in this court.

AFFIRMED.