## No. 18,189.

CHARLES E. CAIN *v.* INDUSTRIAL COMMISSION
OF COLORADO, ET AL.
(315 P. [2d] 823)

Decided September 16, 1957.   Rehearing denied October 7, 1957.

Messrs. HORNBEIN & HORNBEIN, Mr. ROY O. GOLDIN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, Messrs. WOOD, RIS & HAMES, for defendants in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

WRIT of error issued in this action to review the judgment of the district court of the City and County of Denver affirming an award of the Industrial Commission in a proceeding under the Workmen's Compensation Law.

Charles E. Cain was injured accidentally on June 18, 1954, when in the course of his employment a rock fell from a conveyor belt striking him on the top of the head. A cervical laminectomy was performed July 26, 1954, and Dr. Stuck who performed the operation found that Cain reached maximum improvement January 6, 1955, and should be considered permanently disabled 15% as a working unit. Five per cent of this disability he attributed to a previous injury and ten per cent to the accident of June 18, 1954.

Cain was examined by Dr. Freed who also found the disability attributable to the accident to be 10% as a working unit. The Industrial Commission made an award based on a finding of partial permanent disability of 10% as a working unit. An application for a lump sum settlement was approved by the Commission March 2, 1955, and Cain receipted to the insurance carrier for the amount due under this award.

August 29, 1955, Cain petitioned the Industrial Commission to reopen the claim. He alleged that his physical condition had grown worse and requested that the mat-

ter be reopened on the Commission's "own motion." The petition was supported by a report from Cain's physician, Dr. Griffin. On August 31, 1955, the Commission ordered, inter alia:

"That this cause should be reopened on the Commission's own motion for the purpose of determining whether or not there has been error, mistake or change in condition." The order further fixed a date for the hearing before a referee and stated:

"That upon conclusions of said hearing the Referee enter his findings and award in the premises."

On October 11, 1955, a hearing was had before the Referee who ordered a delay in final determination of the matter because of the prospect that treatment which Cain was then undergoing might reduce his disability. May 22, 1956, the matter again came on for hearing. Dr. John G. Griffin, a neurosurgeon whose qualifications as an expert witness were conceded by counsel for the employer and insurance carrier, testified that claimant was unable to return to his former occupation as a heavy equipment operator, and that he had sustained 20% permanent partial disability as a working unit. He also testified that further surgery would not be advisable; that he had previously prescribed heavy neck stretching and physiotherapy and this course of treatment had been faithfully followed. He testified that the course of therapy had not altered claimant's symptoms to any perceptible degree, and that the only treatment he could prescribe at the present time was the wearing of a neck collar and a heavy cervical collar. As to these, Dr. Griffin believed that they would "more or less" keep Cain's condition from getting worse, but that they would not "remedy his original injury."

Thereupon counsel for the employer and insurance carrier requested that Cain submit to an examination by Dr. Freed who requested that a cervical myelogram be performed, to which Cain submitted and was hospitalized for three days in connection therewith. On the basis of

this myelogram Dr. Freed made a report, which included the following:

" * * * In view of the claimant's continuing complaints and his alleged inability to work I think surgical exploration of this area of the spine is justified and should be done. I find it very difficult to ascribe what percent of this claimant's disability is attributable to the various injuries he has allegedly had to his neck. Furthermore, in my original examination of December 13, 1954, he did not give a complete past history and apparently he withheld some information which makes it difficult to give credence to all of his present symptoms and complaints. As I have indicated, a slow-growing neoplasm between the first and second thoracic vertebrae could explain all this claimant's previous neck symptoms, and, if neoplasm is found to be present, then certainly this condition was not caused by any of the alleged injuries. I do not see how this question can be clarified further without exploratory surgery."

The insurance carrier, without benefit of an order from the Commission, instructed Cain to submit to the "exploratory surgery" which Dr. Freed wished to perform. Cain's attorney responded to this request by letter dated July 25, 1956, as follows:

"We are in receipt of Dr. Charles G. Freed's report dated 18 July 1956. Dr. Freed recommends exploratory surgery on Mr. Cain's spine. However, because Dr. Freed is the only doctor who has recommended further surgery, as against the recommendations of Drs. Slick, Stuck and Griffin against further surgery, and because of Mr. Cain's terrific experience since the last surgery, it is Mr. Cain's very earnest and sincere desire not to accept any further offers of surgery. Instead, he would prefer to improve his condition by physiotherapy and chiropractic treatment as much as possible, and not take that chance of being further disabled by repeated surgery."

July 30, 1956, the Commission entered an order in

which reference was made to the case history above set forth. This order included the following:

"Subsequently, the claimant petitioned the Commission to reopen his case and numerous medical examinations have been made in which the claimant is shown to probably be suffering from a space occupying lesion in the cervical spine. This could be due to adhesions following prior surgery or could be due to a slow growing tumor which, if present, is not due to the injury. Respondents have tendered claimant corrective operation which, if successful, should relieve his present condition and would relieve the cause of his discomfort.

"Claimant has advised the Referee that he elects to place himself in the care of an orthopedic surgeon in Albuquerque, New Mexico, where claimant has found employment and believes he can successfully accomplish and secure nonoperative treatment. Claimant refuses the treatment offered by the insurance carrier.

"Without operative interference, the exact cause of claimant's disability cannot be determined nor can it be determined that the disability is or is not due to his injury. Neither can it be determined whether claimant's disability is in excess of the 10% disability as a working unit, for which he has heretofore been compensated.

"IT IS, THEREFORE ORDERED: That the claimant's application to reopen this case be and the same is hereby dismissed."

In Cain's petition for review, filed by his attorney, he asserted that he was not required to submit to exploratory surgery; that he had the right to follow the advice of his physician; that there was no evidence that the surgery was reasonably essential to his recovery or that it would promote it; and that his then disability as a result of his accident of June 14, 1955, had increased by 5% over what it formerly was.

The Commission's order of July 30, 1956, became the final "award," and Cain filed his complaint in the district court, where the action of the Commission was up-

held. Counsel for Cain, in his Summary of Argument for reversal of the judgment, asserts the following:

"I.

"The Industrial Commission has no power to compel an employee to submit to exploratory surgery. The employer has the burden of proving that the proposed surgery is reasonably safe and is essential to promote the employee's recovery. There is no evidence that the surgery offered by the employer would in any way benefit the plaintiff or promote his recovery. Its only purpose is to search for evidence to be used by the employer and its insurance carrier in their efforts to defeat plaintiff's claim. Since the sole reason advanced by the Commission for denying plaintiff compensation was his refusal to submit to exploratory surgery, the decision of the Commission and the judgment of the trial court are erroneous as a matter of law.

"II.

"The plaintiff had the right to rely upon the advice of his own physicians, who recommended against surgery. Where there is a conflict of opinion among the doctors as to the advisability of surgery, an employee cannot be deemed to have acted unreasonably in refusing to submit to such surgery.

"III.

"The Commission committed prejudicial error in receiving, and basing its decision upon, the report submitted by Dr. Freed to the insurance carrier, without affording plaintiff or his counsel an opportunity to cross-examine Dr. Freed or to submit evidence in refutation.

"IV.

"The findings of the Referee and the Commission that the tendered surgery would 'if successful, . . . relieve [plaintiff's] present condition and would relieve the cause of his discomfort' is not supported by any evidence, and is contrary to the report of Dr. Freed, upon

which said finding purports to be based. Dr. Freed makes no assertion that his proposed surgery would either relieve the plaintiff or effect a cure.

"V.

"The plaintiff has submitted to every reasonable proposal for medical examination and treatment by the employer and its insurance carrier. There is neither statutory nor judicial authority which gives the defendants the right to operate upon the plaintiff in a search for evidence to bolster their case. Since the evidence is undisputed that plaintiff's permanent partial disability has increased by 5% as a working unit, he is entitled to an award of compensation for such increase in disability."

Counsel for the Commission, the employer and the insurance carrier advance no argument in opposition to that presented by counsel for Cain. They assert only that:

"1. The Order of the Commission of January 26, 1955, which awarded compensation to Plaintiff became final by operation of law. The case could thereafter only be reviewed by the Commission on its own motion upon the grounds set forth in the statute. The Commission's action in refusing to review this case is discretionary and should not be set aside except in case of fraud or clear abuse of discretion.

"2. No fraud or abuse of discretion appears in the Commission's refusal to review Plaintiff's claim."

Questions to be Determined.

First: *Where an award of the Industrial Commission has become final and thereafter the claimant petitions the Commission "upon its own motion" to reopen the cause for further hearing, and the Commission enters an order that the cause "should be reopened on the Commission's own motion for the purpose of determining whether or not there has been error, mistake or change in condition," and fixes a time for the new hearing before a referee; and where hearings actually were held*

*pursuant to said order and competent evidence received in support of claimant's claim for additional compensation; will the Commission be permitted to dispose of the cause by entry of an order "that claimant's application to reopen this case be and the same is hereby dismissed"?*

██ This question is answered in the negative. The authorities cited by counsel for defendants in error fully support the established rule that the Commission's action in refusing to reopen and review a case cannot be set aside by the courts except in case of fraud or a clear abuse of discretion. *Kokel v. Industrial Commission, et al.,* 111 Colo. 188, 139 P. (2d) 259, and cases there cited. No such issue is presented in the instant case. August 31, 1955, the Commission reopened the case, set a date for hearing, and directed, "That upon conclusion of said hearings the Referee enter his findings and award in the premises." Having thus reopened the case the issues are the same as those presented in any other action for review of a decision of the Commission, namely, whether the award was entered in conformity with the law and supported by competent evidence. Once having reopened a case the Industrial Commission is obligated to decide the issues presented in all respects, as upon original hearing.

██ Second: *Where the Industrial Commission has reopened a case on its own motion, held a hearing and taken evidence, will the law uphold an order of the Commission which provides, "That the claimant's application to reopen this case be and the same is hereby dismissed"?*

This question is answered in the negative. It is clear that the dismissal of Cain's petition was based exclusively upon his refusal to submit to the "exploratory surgery" which Dr. Freed desired to perform. The record shows that Cain submitted to a cervical laminectomy, and, at the request of defendants in error submitted to cervical myelograms on two different occasions. His own physician, and other qualified physicians, advised against surgery. Dr. Freed in his report gave no assurance that

the proposed surgery would give relief. Cain's unwillingness to undergo the operation is understandable and completely justifiable. C.R.S. 1953, 81-12-12, provides in pertinent part:

"If any employee * * * shall refuse to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, the commission, in its discretion, may reduce or suspend the compensation of any such injured employee."

▉ There is nothing in the report of Dr. Freed indicating that the proposed operation was reasonably essential to promote Cain's recovery. Before the Commission would be justified in denying relief to an applicant because of his refusal to submit to treatment or surgery it must appear that the proposed treatment or surgery is such as to be free of unusual risks and calculated to effect a cure. As stated by the Supreme Court of Nebraska in *Simmerman v. Felthauser,* 125 Nebr. 795, 251 N.W. 831:

"The unreasonableness of the refusal of an injured employee to permit an operation to be performed is a question of fact to be determined by the evidence, and the burden of proof to establish that the tendered operation is simple, safe, and reasonably certain to effect a cure is upon the employer."

In *National Lumber and Creosoting Company, et al. v. Kelly, et al.,* 101 Colo. 535, 75 P. (2d) 144, where delays in operative treatment were considered as a basis for denial of benefits, this court stated, inter alia:

"There may have been a relationship between the delay in the operative treatment of the claimant's head injury and his subsequent total disability, but under the circumstances in this case it may not be held against the claimant, because he acted on the advice of his physician."

The only evidence before the Commission, which had probative value upon the issue for determination, was that given by Dr. Griffin whose qualifications were ad-

mitted by defendants in error. His testimony was that the claimant's permanent, partial disability was 5% more than was determined in the original award. This evidence is not controverted by any testimony. The fact that Dr. Freed stated that it was "very difficult to ascribe what percentage of this claimant's disability is attributable to the various injuries he has allegedly had to his neck," and that he would need the results of an exploratory operation to give an opinion, did not controvert the testimony of Dr. Griffin. Upon the record as made, Cain was entitled to an additional award based on the increased partial permanent disability of 5%.

The judgment is reversed and cause remanded with directions to the trial court to order the additional compensation in harmony with the views above expressed.

MR. JUSTICE FRANTZ specially concurs.

MR. JUSTICE FRANTZ specially concurring:

A definitive decision requires us to discountenance language in *National Lumber & Creosoting Co. v. Kelly,* 101 Colo. 535, 75 P. (2d) 144, indicating that the Commission, in its discretion, may order invasions of the body of a claimant by surgery or puncture as part of a physical examination.

C.R.S. '53, 81-12-12, in part provides: "Whenever, in case of injury, the right to compensation under this chapter would exist in favor of an employee, upon the written request of his employer, or the insurer carrying such risk, he shall submit himself from time to time to examination by a physician or surgeon, * * * and he shall likewise submit to an examination from time to time by any regular physician selected and paid for by said Commission, or a member or examiner thereof. * * * If any employee * * * shall refuse to submit to such medical or surgical treatment as is reasonably essential to promote his recovery, the Commission, in its

discretion, may reduce or suspend the compensation of any such injured employee."

It is to be noted that this provision of the Workmen's Compensation Act provides for two things: 1) an examination by a physician or surgeon, and 2) medical or surgical treatment reasonably essential to promote recovery.

Exploratory surgery may be a phase, under the circumstances present here, of examination. Such an operation may be defined as the opening of any body cavity or tissues for the purpose of examining the contents thereof and the structures related thereto, to determine the nature of the pathological processes present, if any, and the treatment thereof, if such be amenable to treatment.

In a civil suit the ruling of the trial court refusing to require a spinal puncture was sustained in *Riss & Co., Inc. v. Galloway,* 108 Colo. 93, 114 P. (2d) 550, 135 A.L.R. 878, the court saying that "it would have been an invasion of plaintiff's rights, and beyond the court's authority without plaintiff's consent." Only when a claimant consents may an exploratory operation be undertaken. Other cases holding to like effect are *U. S. Fidelity & Guaranty Co. v. Wickline,* 103 Nebr. 681, 173 N.W. 689; *Burns v. Aetna Life Insurance Co.,* 95 Mont. 186, 26 P. (2d) 175.