537 P.2d 603

**ARTHUR G. McKEE AND COMPANY, and General Accident Assurance Corp., Petitioners,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Jones C. Hobbs, Respondent Employee.**

**No. I Ca–IC 1209.**

Court of Appeals of Arizona, Division 1, Department C.

July 10, 1975.

Rehearing Denied July 30, 1975.

Review Denied Sept. 30, 1975.

Everett, Bury & Moeller, P. C., by J. Michael Moeller, Tucson, for petitioners.

Greg L. Folger, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Jones C. Hobbs[1] in pro per.

## OPINION

STEVENS, Judge.

The material facts in this case are undisputed. Jones C. Hobbs (claimant) received an industrially related injury on 5 October 1972. Shortly thereafter, he submitted to non-industrially related surgery. He was treated for his industrial injury by Harry R. Stoner, M.D., a general surgeon, and was sent to Stanley S. Tanz, M.D., an or-

---

1. . Hobbs was well and successfully represented before the Commission by Tucson attorney Hal Howard. Mr. Howard's post hearing memorandum presented to the hearing officer was helpful to this Court in its consideration of this case. Hobbs in an uncomplimentary manner discharged Mr. Howard, apparently because the hearing officer did not enter his findings and award within 30 days after the final post hearing legal memorandum was filed. A.R.S. § 23-942(A). The file certified to this Court contains other Hobbs correspondence. Hobbs, at the oral argument, took exception to a short quotation from Hoffman v. Brophy contained in the opening brief. Mr. Moeller offered his apologies and the Court is satisfied. In his brief and at oral argument Hobbs tendered matters not before the Commission and as the Court then advised him, these matters could not be, and have not been, considered by the Court. The petitioners herein raise valid legal issues.

thopedic surgeon. The claimant was also examined by Lawrence M. Haas, M.D., another orthopedic surgeon. All of the doctors informed the claimant that he probably had a herniated nucleus pulposus at the L–5, S–1 level on the left side. They advised him that he should undergo a myelographic study, and, if the result was positive, back surgery consisting of either a laminectomy or a possible fusion was recommended. The claimant was willing to undergo a myelogram, but refused the surgery unless he would be guaranteed a 100% recovery and the ability to return to his work as a boilermaker. He was told that even with surgery he would not be able to return to his occupation as a boilermaker.

There is only one question before this Court at this time, and that is whether the claimant's refusal to submit to the recommended back surgery was unreasonable.

■ The hearing officer decided, on 28 May 1974, that the answer to this specific question was in the negative. On review, the question, was once again answered in the negative. It was then brought before this Court on a writ of certiorari.

The Arizona statutes that govern this situation are:

A.R.S. § 23–1026(E):

"Upon appropriate application and hearing, the commission may reduce or suspend the compensation of an employee who persists in unsanitary or injurious practices tending to imperil or retard his recovery, or who refuses to submit to medical or surgical treatment reasonably necessary to promote his recovery."

A.R.S. § 23–1027:

"No compensation shall be payable for the death or disability of an employee if his death is caused by, or insofar as his disability may be aggravated, caused or continued by an unreasonable refusal or neglect to submit to or follow any competent and reasonable surgical treatment or medical aid."[2]

■ There is no doubt that if the recommended surgery does not involve serious suffering or danger, is classified as a minor operation, and will reduce the functional impairment, that a refusal would be unreasonable. Foutz v. Phelps Dodge Corp., 72 Ariz. 350, 236 P.2d 42 (1951); Ujevich v. The Industrial Commission of Arizona, 42 Ariz. 276, 25 P.2d 273 (1933).

■ If an operation is a serious one, a refusal may be considered reasonable upon certain facts.[3] Each case must be determined upon the particular facts presented. The facts here are that the operation that is recommended, a laminectomy or a possible fusion, is a major operation; that there is some risk involved in both the surgery and the general anesthetic; that success cannot be guaranteed; but that the odds are in his favor that surgery will produce a much improved back. It should also be noted that the claimant does have a history of previous back difficulties, and he had refused back surgery in 1955.

From the record it is apparent that the claimant did have a fear of this operation, and it was a justified fear.

Dr. Stoner testified:

" * * * Speaking in general terms, I must admit that the results from the sur-

2. The statutes are quoted as they appeared before the 1973 and 1974 amendments because the injury in this case occurred in 1972 and the changes that appear in the statute are substantive, not procedural, therefore the prior statutes are followed.

3. See the following cases:
Evans v. Stearns-Roger Manufacturing, 253 F.2d 383, (U.S.Ct. of App.N.Mex.1958);

Bland Casket Co. v. Davenport, 221 Tenn. 492, 427 S.W.2d 839 (1968); Walker v. International Paper Co., 230 Miss. 95, 92 So. 2d 445 (1957); Beth-Elkhorn Corp. v. Epling, 450 S.W.2d 814 (Ky.App., 1970); Bethlehem Mines Corp. v. Hall, 379 S.W.2d 58 (Ky.App., 1964); Stewart v. Bd. Of Public Information, Dade County, 102 So.2d 821 (Fla.App., 1958); Lavell Coal Co. v. Stamper, 163 Okl. 289, 21 P.2d 1046 (1933).

gery and the old type of degenerative back disease are not always satisfactory. I suspect that would be about the best way I could put it."

Going on, Dr. Stoner was asked:

"Q. All right. Let me ask you another question, Doctor. Did you discuss with Mr. Hobbs the possible outcome regardless if you would defer to an orthopedist?

"A. Yes. I expressed the opinion which I just mentioned here that I felt that the results from this type of surgery—from my own experience have not—infrequently have been less than satisfactory."

Dr. Tanz, the orthopedist, testified:

"Q. Did you advise Mr. Hobbs as to the probable and possible outcome of the —of either the laminectomy or the fusion?

"A. Yes, Sir.

"Q. What did you tell him?

"A. I told him that I couldn't guarantee the results, but it's possible that he might be worse. The odds were very good that he would be better, but it was a choice that he would have to make, and nobody could make it for him, and there's no guarantee on it."

There was also a medical report from Dr. Haas, which by stipulation, was incorporated into the evidence presented at the hearing. His conclusions were very similar to those of Dr. Tanz.

The claimant testified that he would submit to a myelogram, but not to the follow-up surgery. He stated, "too many guys I worked with didn't recover with them [back operations] * * *." The claimant went on to explain his conversations with Dr. Tanz concerning the risks involved with the back operation:

"Q. What did he [Dr. Tanz] tell you about the risk of having back surgery?

"A. Well, he said some of them turn out good, and some of them don't turn out good. Some of them go back to work and some don't."

The claimant did state that if he could be promised that he would be able to return to work and work seven more years, when he could get a pension, he would consider submitting to the operation.

The doctors also agreed that since the claimant refused the surgery, there was no reason to perform the pre-operative procedure known as a myelographic study, because the myelogram carries with it some risk and its main purpose is to determine whether surgery is necessary in the individual case. Here, where no matter what the myelogram disclosed as to whether surgery should be performed, surgery was not going to be performed because the claimant refused. Therefore, the usefulness of the myelogram is negative.

The majority of the decided cases have held that it is reasonable for a claimant to refuse to submit to back surgery for a spinal fusion or other medical spinal operations.

The Supreme Court of Oklahoma has held the rule to be that:

"The State Industrial Commission is without jurisdiction to order the injured employee to submit to a major operation involving a risk of life, however slight, merely in order that the pecuniary obligations created by law in his favor against his employer may be minimized." Monday v. Concho Sand & Gravel Company, 332 P.2d 965, 967 (Okl.1958)

The Supreme Court of Colorado has ruled that:

"Before the Commission would be justified in denying relief to an applicant because of his refusal to submit to treatment or surgery it must appear that the proposed treatment or surgery is such as to be free of unusual risks and calculated to effect a cure." Cain v. Industrial Commission of Colorado, 136 Colo. 227, 315 P.2d 823, 828 (1957).

Cain, supra, went on to quote, with approval, an opinion by the Supreme Court of Nebraska:

"The unreasonableness of the refusal of an injured employee to permit an operation to be performed is a question of fact to be determined by the evidence, and the burden of proof to establish that the tendered operation is simple, safe and reasonably certain to effect a cure is upon the employer. Simmerman v. Felthauser, 125 Neb. 795, 251 N.W. 831, 833 (1934)." 315 P.2d at 828.

■ Many operations are considered successful, and yet some patients die. When the operation is a major operation, and the claimant has a genuine fear, his refusal may be found to be reasonable.

■ As long as there is a reasonable basis for the findings of the hearing officer and the Commission, this Court will not set aside that decision.

"[T]his Court does not weigh evidence or resolve conflicts therein. It only searches the records to see whether the commission's findings are reasonably supported by the evidence." Ratley v. Industrial Commission, 74 Ariz. 347, 349, 248 P.2d 997, 998 (1952)

■ In this instance, there is some risk involved due merely to the type of surgery recommended. The medical experts all testified to the fact that a laminectomy and/or fusion is a major operation and that if the surgery was not to be performed there was no reason to subject the claimant to a myelographic study.

The award is affirmed.

NELSON, P. J., Department C, concurs.

WREN, Judge (dissenting).

I do not agree. The majority's opinion is predicated on finding that genuine fear on the part of the claimant justifies a refusal to undergo surgery.

In my opinion, this conclusion can find no support in either the statutes or case law. The test as to reasonable refusal is

an *objective* rather than a *subjective* one. A.R.S. § 23–1026(E) states in pertinent part:

"[T]he commission may reduce or suspend the compensation of an employee . . . who refuses to submit to medical or *surgical treatment reasonably necessary* to promote his recovery." (Emphasis supplied).

Also, A.R.S. § 23–1027 provides:

"No compensation shall be payable for the . . . disability of an employee . . . insofar as his disability may be aggravated, caused or continued by an unreasonable refusal . . . to submit to . . . *reasonable surgical treatment* . . . ." (Emphasis supplied).

The key words in these statutes relate to the reasonableness of the recommended surgical treatment, not the reasonableness of a claimant's fear. *Fear* of surgery is simply not a ground for refusal.

Two orthopedic surgeons recommended the surgical treatment as both reasonable and necessary for any improvement. There was no medical evidence to the contrary. Furthermore, it was established that the proposed surgery provided an eighty to eighty-five percent chance of improvement. It was further established that the only risk to life would be that associated with the administration of a general anesthetic. Unless we are to hold that every operation involving general anesthesia may be refused by a claimant, Monday v. Concho Sands, cited in the majority opinion, is not in point. In fact, Professor Larson, after quoting the same language from the Oklahoma court, made the following comment in the next paragraph:

"On the other hand, refusal of surgery cannot be deemed reasonable when the only reason shown for the refusal is the claimant's subjective fear of the operation, or of anesthesia, unless that fear itself has some substantial basis in the claimant's experience." 1 A. Larson, Workmen's Compensation Law § 13.22.

Moreover, as stated in Hays v. Industrial Commission, 138 Col. 334, 333 P.2d 617 (1958) :

"There was no suggestion that such operation (back surgery) might result fatally except that no medical expert can or will say that one undergoing major surgery under general anesthetic will survive anymore than one in perfect health can be assured when he awakens in the morning that he will be on this earth by nightfall." 138 Col. at 337, 333 P.2d at 618.

I submit that claimant's refusal here, assertedly based on fear and the fact that he could not be guaranteed a one-hundred percent recovery and the ability to return to the same work as a boilermaker, was wholly unreasonable.

I would set aside the award.