**HOLME, ROBERTS & OWEN and State Compensation Insurance Authority, Petitioners,**

v.

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, and Suzann R. Nelson, Respondents.**

**No. 89CA0881.**

Colorado Court of Appeals, Div. I.

July 19, 1990.

Rehearing Denied Aug. 23, 1990.

Certiorari Denied Dec. 10, 1990.

Anderson, Campbell & Laugesen, P.C., John V. FitzSimons, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., John August Lizza, Asst. Atty. Gen., Denver, for respondent Industrial Claim Appeals Office.

Suzanne Harvey Lynch, Denver, for respondent Suzann R. Nelson.

Opinion by Judge PIERCE.

Petitioners, Holme, Roberts and Owen (HRO), and its insurer, State Compensation Insurance Authority, contest a final order of the Industrial Claim Appeals Office (Panel) which determined that a job-related psychiatric disability suffered by the claimant, Suzann Nelson, was compensable under the Colorado Workmen's Compensation Act (Act), § 8–40–101, C.R.S. (1986 Repl. Vol. 3B). We affirm.

The claimant was a legal secretary with twenty years of experience. She had been employed for eight years at HRO when she was unexpectedly demoted from her supervisory position as a secretarial coordinator. The evidence is undisputed that the claimant received no oral or written warnings of deficiencies in her job performance prior to the demotion, nor was she initially provided with a written memorandum detailing or explaining the disciplinary action. At claimant's request, a written memorandum was subsequently furnished.

The claimant and other supervisory personnel at HRO had been trained in the concept of "progressive discipline," a technique by which discipline is imposed in stages, beginning with oral or written warnings, counselling, probation, and ultimately, demotion or termination. HRO did not have a written personnel policy which required the use of progressive discipline; however, the evidence was undisputed that this practice was generally followed with respect to the firm's secretarial staff. One secretary testified that, to her knowledge, claimant's demotion was the only instance in which progressive discipline was not used.

Following her demotion, claimant continued to work at HRO, but she began having nightmares and experiencing feelings of abandonment, rejection, terror, and shock.

Two weeks after the demotion, the claimant found a cartoon on her work chair which depicted a person in a small rowboat adrift in the ocean, surrounded by sharks. The caption read, "Look. Why don't you just give yourself up quietly? ... Otherwise, this thing could turn into a frenzy— and nobody wants that." The claimant testified that she was "terrified" by the cartoon, and that after finding it, she sought psychological counselling. Her condition deteriorated, however, and she was ultimately hospitalized for in-patient psychiatric care.

Her treating psychiatrist diagnosed her condition as a major depressive episode and the aggravation of a pre-existing, but latent, personality disorder. The psychiatrist testified unequivocally and to a reasonable degree of medical probability that claimant's disability was caused by the demotion, and specifically, by the fact that claimant was demoted without any warning or anticipation. There was no evidence that the disability was precipitated by stress outside of the claimant's employment.

The Administrative Law Judge (ALJ) concluded that claimant's disability was attributable to stress which arose primarily from the fact of her sudden, unanticipated demotion. The ALJ, however, denied benefits on the ground that demotions were common to all fields of employment and that the claim was therefore barred under § 8–52–102(2), C.R.S. (1986 Repl.Vol. 3B). On review, the Panel set aside the ALJ's order. The Panel noted that there was no evidence that "sudden, unanticipated demotions" were common to all fields of employment, and it ruled that the ALJ had erred in disregarding the particular facts and circumstances of the claimant's demotion. On remand, the ALJ found claimant's claim to be compensable and awarded temporary disability and medical benefits.

The sole issue on review involves the interpretation of § 8–52–102(2), C.R.S. (1986 Repl.Vol. 3B), which imposes the following restrictions on claims involving mental or emotional stress:

"(a) The claim of emotional or mental stress must be proven by evidence sup-

ported by the testimony of a licensed physician or psychologist;

(b) The emotional or mental stress which is the basis of the claim must have arisen primarily from the claimant's then occupation and place of employment;

(c) The claim of emotional or mental stress cannot be based, in whole or in part, upon facts and circumstances that are common to all fields of employment; and

(d) The emotional or mental stress which is the basis of the claim must be, in and of itself, either sufficient to render the employee temporarily or permanently disabled from pursuing the occupation from which the claim arose or to require medical or psychological treatment.

There is no dispute that the evidence sufficiently satisfies the restrictions imposed under (a), (b), and (d). The only dispute concerns the meaning of subparagraph (c) and whether the Panel erred in requiring the ALJ to consider the particular facts and circumstances of the claimant's demotion.

■ A court's primary task in construing a statute is to ascertain and implement the intent of the General Assembly. To discern intent, we look first to the language of the statute, giving effect to the ordinary meaning of the words and phrases used. *People v. District Court,* 713 P.2d 918 (Colo.1986).

Statutes susceptible to more than one interpretation must be construed in light of the apparent legislative intent and purpose. *Engelbrecht v. Hartford Accident & Indemnity Co.,* 680 P.2d 231 (Colo.1984). In determining legislative intent, the court may consider the statute's legislative history, the state of the law prior to legislative enactment, the problem addressed by the legislation, and the statutory remedy created to cure the problem. Section 2-4-203, C.R.S. (1980 Repl.Vol. 1B); *Johnson v. Industrial Commission,* 761 P.2d 1140 (Colo. 1988).

■ We interpret the phrase "facts and circumstances ... common to all fields of employment" to mean those employment conditions that are generally inherent in every work situation. *See White Star Linen Rental v. Industrial Claim Appeals Office,* 787 P.2d 189 (Colo.App.1989). These conditions include performance evaluations, disciplinary actions, job transfers, promotions, demotions, and terminations. The issue here is whether a claim which arises out of a common work condition is barred as a matter of law under § 8-52-102(2)(c), or whether compensability depends upon the particular facts and circumstances of each case.

The petitioners rely upon the preceding phrase "in whole or in part" and argue that since demotions are common to all fields of employment, any claim based "in whole or in part" upon a demotion is barred as a matter of law under subparagraph (c). The claimant, and the Panel, however, rely on the phrase "facts and circumstances" and argue that the plain meaning of this phrase contemplates a consideration of all the relevant facts of each particular case. Our analysis of the underlying legislative intent leads us to accept the latter argument.

Prior to the enactment of § 8-52-102(2), Colorado courts had recognized that job-related mental or emotional stress claims were compensable under the Workmen's Compensation Act. *City of Boulder v. Streeb,* 706 P.2d 786 (Colo.1985); *Ft. Logan Mental Health Center v. Walker,* 723 P.2d 740 (Colo.App.1986).

In 1986, the General Assembly enacted § 8-52-102(2). As originally introduced, the subsection would have eliminated workmen's compensation coverage for mental and emotional stress claims. The proposed amendment provided that "job-related mental or emotional stress shall not constitute the cause of a compensable injury or occupational disease." This language was subsequently rejected, however, and an alternative amendment was introduced which retained stress-related claims within the ambit of the Workmen's Compensation Act, but at the same time, established an objective standard for determining a causal connection between stress-related disabilities and employment. *See* 1986 House Journal at 621.

The alternative amendment was subsequently modified to include the present

statutory language, and was approved by both houses of the General Assembly. Colo.Sess. Laws 1986, ch. 73, § 8–52–102 at 520. The legislative history indicates that, in adopting the amendment, the General Assembly was concerned that the total exclusion of stress-related claims from the Workmen's Compensation Act would subject employers to tort liability for such disabilities, and that civil damages would be substantially more costly to employers than workmen's compensation benefits. *See* Tape Recording of the House Committee on Business Affairs and Labor (March 11, 1986).

In view of the foregoing legislative history, we reject the argument that a stress-related claim arising out of a job demotion is barred as a matter of law under § 8–52–102(2)(c). This interpretation is overbroad and would defeat the intent of the General Assembly to retain job-related stress claims within the ambit of the Workmen's Compensation Act. *See Industrial Commission v. Milka,* 159 Colo. 114, 410 P.2d 181 (1966).

The petitioners' argument also disregards the plain meaning of the phrase "facts and circumstances," a term which is generally understood to encompass not only specific facts, but also, the circumstances relevant to those facts. *Cf.* § 12–44–101(4), C.R.S. (1985 Repl.Vol. 5) ("facts or circumstances"); § 11–22–105(3), C.R.S. (1989 Cum.Supp.) ("facts" only).

Although demotions and employee discipline are common conditions of employment, we conclude that discipline which is arbitrary, unreasonable, or taken in bad faith is not common to *all* fields of employment. *See White Star Linen Rental v. Industrial Claim Appeals Office, supra; Guillot v. Sentry Insurance Co.,* 472 So.2d 197 (La.App.1985); *In re Compensation of McGarrah,* 59 Or.App. 448, 651 P.2d 153 (1982); *Consolidated Freightways v. Drake,* 678 P.2d 874 (Wyo.1984).

Here, the evidence was undisputed that supervisory personnel at HRO, including claimant, were trained in the concept of progressive discipline, and that the claimant reasonably believed she would be given an opportunity to explain or correct any perceived deficiencies in her job performance. The claimant, in fact, testified that three months prior to her demotion she specifically asked her supervisor if her job was in jeopardy; however, she was reassured that there were no complaints about her job performance and that she had nothing to be concerned about.

The evidence is sufficient to permit the inference that sudden, unanticipated demotions were not common for the secretarial staff at HRO, and there was no evidence that such demotions are common in all fields of employment.

The petitioners argue that it was the claimant's burden to prove affirmatively that sudden, unanticipated demotions are not common in all fields of employment. However, since this issue was raised for the first time in the petition for review, we will not consider it. *See Apache Corp. v. Industrial Commission,* 717 P.2d 1000 (Colo.App.1986).

Order affirmed.

HUME and MARQUEZ, JJ., concur.