805 P.2d 1180 (1991)
NEODATA SERVICES and Associated Indemnity Company, Petitioners,
v.
The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado; Steven D. Arnold; and Director, Division of Labor, Department of Labor and Employment, Respondents.
No. 89CA1744.
Colorado Court of Appeals, Division IV.
January 17, 1991.
*1181 Clifton & Hemphill, P.C., James R. Clifton, Karl A. Schultz, Denver, for petitioners.
Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Jill M.M. Gallet, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Director, Div. of Labor.
Wilderman & Linnet, P.C., Jonathan Wilderman, Denver, for respondent Steven D. Arnold.
Opinion by Judge CRISWELL.
In seeking our review of an order of the Industrial Claim Appeals Office (Panel) that awarded workers' compensation benefits to Steven B. Arnold (claimant), the employer, Neodata Services, and its insurer, Associated Indemnity Co., (petitioners) argue that the Panel erroneously refused to apply retroactively certain 1986 amendments to the Workers' Compensation Act and otherwise erred in awarding benefits to claimant. We conclude that the Panel committed no error and, therefore, affirm its order.
The claimant, after 21 years of employment at Neodata, resigned for medical reasons in December 1983. For the last three and one-half years of his employment, claimant was the company's production manager for mailing services, a job that required him to supervise 80 to 130 employees and oversee the mailing of 800,000 to 1,000,000 pieces of mail per day.
The Administrative Law Judge (ALJ) found that claimant had suffered from a pre-existing kidney disease for a number of years. The ALJ also found that, commencing in 1980, at about the time that defendant first became the production manager, he also began to suffer from hypertension. In the position of production manager, claimant was exposed to "considerable" and "prolonged" job stress that resulted from scheduling conflicts, budget cuts, production quotas, inaccurate volume forecasting, hour-by-hour production deadlines, personnel matters, introduction of new equipment, unreasonable supervisory pressures, 60-hour work weeks, and being on call on weekends.
After considering the reports or testimony of four experts, the ALJ found that the "consensus" of opinion was that claimant's hypertension was caused, in part, by the stress associated with his employment. He also found that this condition presented an "especially significant health risk" to claimant because it could aggravate claimant's pre-existing kidney disease. He concluded, therefore, that claimant was disabled from performing any stressful work. Hence, he awarded claimant temporary total disability *1182 benefits and directed that he be evaluated for vocational rehabilitation. The ALJ also imposed a penalty against the petitioners under § 8-52-102, C.R.S. (1986 Repl.Vol. 3B) for their failure timely to admit or to deny liability.
On review, the Panel affirmed that part of the order awarding compensation to claimant.

I.
Petitioners first contend that the Panel erred in determining that the 1986 amendments to § 8-52-102, C.R.S. (Colo. Sess.Laws 1986, ch. 73, at 520-521) should not be applied retrospectively to the claim here involved. We agree with the Panel, however, that these amendments were not intended to be applied retroactively. Thus, since the onset of claimant's disability occurred prior to their adoption, they have no applicability to claimant's claim.
Generally, it is to be presumed that a statute speaks to the future, not to the past. State Board of Equalization v. American Airlines, Inc., 773 P.2d 1033 (Colo.1989). Indeed, it is constitutionally impermissible to adopt a law that is "retrospective in its operation." Colo.Const. art. II, § 11, and art. V, § 12.
Of course, a statute which, while preserving a claim, merely changes the procedure for asserting that claim, may be applied retrospectively to fulfill its statutory purpose. Continental Title Co. v. District Court, 645 P.2d 1310 (Colo.1982) (statute authorizing court to exercise jurisdiction over claim if administrative agency fails to act within specified time period may be applied to existing claims).
Thus, the question presented by the petitioners' assertion is whether the statutory amendments involved here effected merely a procedural change or a change in the substantive requirements for the assertion of the claimant's claim. We conclude that they effected a substantive change.
Prior to the 1986 amendments, there was no statute specifically addressing claims based upon emotional or mental stress. Thus, whether a worker suffered a compensable injury or disease as a result of stress depended solely upon whether the disabling condition met the statutory definitions of injury or disease.
Under those definitions, Colo.Sess.Laws 1975, ch. 71, § 8-41-108(2) and (3) at 293, an "injury" included an "occupational disease," and such a disease was one that resulted directly from employment, was a natural incident of the work, was proximately caused by the employment, and did not come from a hazard to which the worker would have been "equally exposed outside of the employment." Thus, so long as there was "sufficient evidence to support a determination by a preponderance of the evidence that job-related emotional or mental stress proximately caused the injury or disease resulting in death or disability," an award of compensation was warranted under those statutes. City of Boulder v. Streeb, 706 P.2d 786 (Colo.1985).
Further, there was no requirement that the stress involved be the sole proximate cause of the injury or disease. See Ft. Logan Mental Health Center v. Walker, 723 P.2d 740 (Colo.App.1986). If the concurrent, non-industrial cause was not "an equally exposing stimulus," compensation was awardable under § 8-41-108(3). Hall v. Industrial Claim Appeals Office, 757 P.2d 1132 (Colo.App.1988).
Finally, the claim to compensation did not have to be established by medical evidence. Provided the claim was established to a "reasonable probability," no particular type of evidence was required to be produced. Krumback v. Dow Chemical Co., 676 P.2d 1215 (Colo.App.1983).
However, the 1986 amendments place additional requirements upon a claimant in order to establish an injury or disease that is alleged to have resulted from emotional or mental stress.
First, Colo.Sess.Laws 1986, ch. 73, § 8-41-108(2.2) provides that, if the death or disability is claimed to have resulted from stress, that stress must be "proximately caused solely by hazards to which the worker would not have been equally *1183 exposed outside the employment." (emphasis supplied)
Further, Colo.Sess.Laws 1986, ch. 73, § 8-52-102(2) places four additional requirements upon a claim based upon emotional or mental stress. Under this amendment, the stress must have arisen "primarily from claimant's then occupation and place of employment"; the claim must be based upon "facts and circumstances that are not common to all fields of employment"; the stress must "in and of itself" be sufficient either to render the worker incapable of pursuing the occupation from which the claim arose or to require further medical or psychological treatment; and the claim must be proven by the testimony of a licensed physician or psychologist. (emphasis supplied)
While the requirement for medical testimony might be considered to be a mere procedural change, see Krumback v. Dow Chemical Co., supra, the other added requirements of § 8-52-102(2) are not merely procedural or remedial. Whatever meaning may ultimately be applied to these terms, they effect changes in the substantive requirements for the claim being asserted, not merely changes in the procedure to be followed in asserting it.
In light of this consideration, and in view of the fact that the General Assembly expressly provided that the 1986 amendment to § 8-52-102 was to "take effect July 1, 1986" (Colo.Sess.Laws 1986, ch. 73 at 540), we conclude that these amendments were not intended to have any retrospective effect. They were intended to apply only to claims accruing on and after that date. Thus, since the claim here accrued at least by December 1983, the 1986 legislation is inapplicable to that claim. See Romero v. Industrial Commission, 632 P.2d 1052 (Colo.App.1981).

II.
Because we hold that § 8-52-102(2) is inapplicable to the claim asserted, we need not determine whether the record supports the ALJ's finding that the stress encountered by claimant on his job was not "common to all fields of employment." See also Holme, Roberts & Owen v. Industrial Claim Appeals Office, 800 P.2d 1332 (Colo. App.1990).

III.
Petitioners also argue that the ALJ's findings of fact reflect that he failed to consider all of the evidence. Relying upon such decisions as Hall v. Industrial Claim Appeals Office, supra, which held that an ALJ's finding of "no evidence" upon a point is not sufficient to demonstrate that the ALJ considered all of the evidence and rejected some on credibility grounds, they argue that the ALJ's use of the word "consensus" in his written findings likewise fails to demonstrate that he considered all of the pertinent evidence. Under the circumstances presented here, we disagree.
The ALJ used the word "consensus" in two critical portions of his written findings. He said:
"The consensus of medical opinion is that claimant has stress-related hypertension.
. . . . .
The weight of the medical evidence indicates that claimant has stress-related hypertension which presents an especially significant health risk to claimant, since it could aggravate his pre-existing kidney disease. Although [petitioners' expert witness] is of opinion that claimant could return to work if his high blood pressure was controlled by medication, it appears that the consensus of medical opinion is that claimant should avoid stressful work due to the difficulty in controlling his hypertension when he is subjected to stress."
These findings cannot legitimately be read as ignoring the testimony of petitioners' expert. This witness testified that, in his opinion, it was claimant's pre-existing kidney condition that was the base cause of his hypertension. He admitted, however, that, in light of the nature of various blood pressure readings obtained by another expert, stress also must play a significant role in this condition.
*1184 Further, the ALJ expressly acknowledged the opinion of petitioners' expert that claimant would not be industrially disabled if he made consistent use of medication, but rejected that opinion in favor of the opinion of claimant's treating physician who said that claimant was permanently disabled from engaging in occupations that placed stress upon him.
In short, the findings here explicitly demonstrate that the ALJ did not overlook the evidence that might be considered to be inconsistent with his findings. Read in context, the ALJ's use of the word "consensus" did not imply that he concluded that all of the testimony was undisputed. He meant only that he found the weight of the evidence to be contrary to the testimony of petitioners' expert. Thus, we conclude that these findings are sufficient to reveal the nature of his credibility resolutions.

IV.
Petitioners finally complain that the record fails to provide substantial support for the ALJ's finding that claimant was disabled and contend that the ALJ erred in failing to consider their assertion that claimant engaged in an injurious practice within the meaning of § 8-51-110(3), C.R.S. (1986 Repl.Vol. B). We conclude that both these complaints are unjustified.
Petitioners' assertion that the record demonstrates that claimant would be able to work at a stressful occupation if he took medication for his hypertension is based solely upon the opinion of their expert. In contrast to this opinion, however, claimant's treating physician, who had prescribed medication for his hypertensive condition on occasion, specifically opined that claimant was permanently restricted from engaging in any stressful employment.
This latter evidence supports the ALJ's disability finding. Thus, that finding is binding on appeal. Gelco Courier v. Industrial Commission, 702 P.2d 295 (Colo. App.1985).
Further, our review of the record convinces us that there was no competent evidence that would support a finding that claimant engaged in an injurious practice by failing to take prescribed medication.
The employer has the burden of proving that a worker has persisted in engaging in "any unsanitary or injurious practice which tends to imperil or retard his recovery" or has "refused to submit to such medical ... treatment ... as is reasonably essential to promote his recovery and rehabilitation." Section 8-51-110(3), C.R.S. (1986 Repl.Vol. 3B). See Cain v. Industrial Commission, 136 Colo. 227, 315 P.2d 823 (1957). And, absent proof of a refusal to accept essential medical treatment or a persistence in engaging in an injurious practice, the statute is inapplicable. Padillo v. F.H. Linneman Construction Co., 29 Colo.App. 137, 479 P.2d 990 (1971).
Here, the evidence was that various types of medication were, from time to time, prescribed by claimant's treating physician. That physician, however, also referred claimant to another professional for consultation and treatment under a biofeedback regimen. During the course of this latter treatment, claimant ceased taking his medication. His testimony was that he notified his treating physician of this fact. And, there is no evidence in this record that claimant was told by anyone that he should not cease his medication or that the medication was "reasonably essential" for his treatment.
Absent some evidence that claimant was instructed to undertake some action which he refused to take, or took some action that he was instructed not to take, there is no evidentiary basis for petitioners' assertion. Thus, since the ALJ could not, as a matter of law, have found that claimant engaged in an injurious practice, the Panel committed no prejudicial error in refusing to remand that issue to him for consideration.
The order of the Panel is affirmed.
MARQUEZ and DAVIDSON, JJ., concur.